1   JENNIFER LYNCH (SBN 240701)
    jlynch@eff.org
2   ELECTRONIC FRONTIER FOUNDATION
    815 Eddy Street
3   San Francisco, CA 94109
    Telephone: (415) 436-9333
4   Facsimile: (415) 436-9993

5   Attorney for Plaintiff
    ELECTRONIC FRONTIER FOUNDATION

6

7

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13   ELECTRONIC FRONTIER FOUNDATION,      )  Case No. 15-cv-03186-MEJ
                                          )
14                       Plaintiff,       )  **NOTICE OF CROSS MOTION AND**
                                          )  **CROSS MOTION FOR SUMMARY**
15                                        )  **JUDGMENT; MEMORANDUM OF**
         v.                               )  **POINTS AND AUTHORITIES IN**
16                                        )  **SUPPORT OF CROSS MOTION FOR**
     DEPARTMENT OF JUSTICE,               )  **SUMMARY JUDGMENT**
17                                        )
                                          )  **AND**
18                       Defendant.       )
                                          )  **OPPOSITION TO DEFENDANT'S**
19                                        )  **MOTION FOR SUMMARY**
                                          )  **JUDGMENT**
20                                        )
                                          )
21                                        )  Date:  May 5, 2016
                                          )  Time:  10:00 a.m.
22                                        )  Courtroom: B, 15th floor
                                          )
23   _____)  Hon. Maria-Elena James

24

25

26

27

28

---

Case No. 15-03186-MEJ      NOT. OF MOT. AND CROSS MSJ AND OPP. TO DEF'S MSJ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on May 5, 2016, at 10:00 a.m. in the United States Courthouse at San Francisco, California, plaintiff the Electronic Frontier Foundation (EFF) will, and hereby does, cross move this Court for summary judgment on all of its claims.

Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring defendant the Department of Justice and its component the Drug Enforcement Agency to release records under the Freedom of Information Act, 5 U.S.C. § 552. EFF respectfully moves this Court to issue an order requiring the government to release all records improperly withheld from the public. This cross motion is based on this notice of motion, the memorandum of points and authorities in support of this cross motion, the Declaration of Jennifer Lynch and attached exhibits in support of this cross motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

DATED: March 17, 2016        By:  */s/ Jennifer Lynch*
                                      Jennifer Lynch
                                       ELECTRONIC FRONTIER FOUNDATION
                                       815 Eddy Street
                                       San Francisco, CA 94109

                                       Attorney for Plaintiff
                                       ELECTRONIC FRONTIER FOUNDATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

STATEMENT OF FACTS ......................................................................................... 1

    I.    The Hemisphere Program Allows Law Enforcement Access to Trillions of Pieces of Data on Americans' Sensitive Phone Calls ........................................................ 1

    II.   Procedural History of this Case ................................................................... 4

ARGUMENT .......................................................................................................... 5

    I.    FOIA Establishes a Presumption of Disclosure, and the Government Bears the Burden of Proving Withheld Information Is Clearly Exempt ........................................ 5

    II.   Defendant Has Improperly Withheld Records Under Exemption 5 ................................ 6

        A.    Defendant Has Not Proven that Five Records Are Inter- or Intra-Agency Communications ................................................................................ 7

        B.    Defendant Has Improperly Withheld Records Under the Deliberative Process Privilege ........................................................................................... 8

        C.    Defendant Has Improperly Withheld Records Under the Work-Product Privilege ......................................................................................... 10

        D.    Defendant Has Improperly Withheld Records Under the Attorney-Client Privilege ......................................................................................... 10

    III.   Defendant Has Improperly Withheld Records Under Exemption 7 ............................ 12

        A.    Defendant Has Improperly Withheld Records Under Exemption 7(A) ............... 13

        B.    Defendant Has Improperly Withheld Records Under Exemption 7(D) ............... 14

        C.    Defendant Has Improperly Withheld Records Under Exemption 7(E) .............. 16

    IV.   Defendant Has Failed to Segregate and Release Non-Exempt Information ................... 21

    V.    If the Court Has Any Doubts About Granting Summary Judgment for Plaintiff, the Court Should Review the Disputed Records *In Camera* ................................. 23

CONCLUSION ..................................................................................................... 25

1
2

# TABLE OF AUTHORITIES

## CASES

3
4
*ACLU v. FBI*,
   2015 WL 7251928 (N.D. Cal. 2015) ................................................................. 11

5
*Air Force v. Rose*,
   425 U.S. 352 (1976) ..................................................................................... 5

6
7
*Allen v. CIA*,
   636 F.2d 1287 (D.C. Cir. 1980) ...................................................................... 23

8
*Banks v. DOJ*,
   813 F. Supp. 2d 132 (D.D.C. 2011) ................................................................. 16

9
10
*Bay Area Lawyers Alliance v. State Dept.*,
   818 F. Supp. 1291 (N.D. Cal. 1992) ................................................................. 22

11
*Bevis v. State Dept.*,
   801 F.2d 1386 (D.C. Cir. 1986) ...................................................................... 13

12
13
*Binion v. DOJ*,
   695 F.2d 1189 (9th Cir. 1983) ........................................................................ 13

14
*Birch v. USPS*,
   803 F.2d 1206 (D.C. Cir. 1986) ....................................................................... 6

15
16
*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ................................................................... 20, 21

17
*Bothwell v. Brennan*,
   2015 WL 6689387 (N.D. Cal. 2015) .................................................................. 6

18
19
*Brown v. CBP*,
    2015 WL 5535799 (N.D. Cal. 2015) ................................................................. 5

20
*Campbell v. DOJ*,
   164 F.3d 20 (D.C. Cir. 1998) ......................................................................... 15

21
22
*Carter v. Commerce Dep't*,
   307 F.3d 1084 (9th Cir. 2002) ...................................................................... 7, 8

23
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................... 6

24
25
*Center for Auto Safety v. EPA*,
   731 F.2d 16 (D.C. Cir. 1984) ........................................................................ 22

26
*Center for Biological Diversity v. OMB*,
   2009 WL 1246690 (N.D. Cal. 2009) ................................................................. 11

27
28
*Center for Intl. Envtl. Law v. Trade Rep.*,
   237 F. Supp. 2d 17 (D.D.C. 2002) ................................................................. 7, 8

*Church of Scientology v. Dept. of Army*,
   611 F.2d 738 (9th Cir. 1979) ....................................................................... 13

*Church of Scientology v. DOJ*,
   30 F.3d 224 (1st Cir. 1994) ......................................................................... 10

*Church of Scientology v. Smith*,
   721 F.2d 828 (D.C. Cir. 1983) .................................................................... 24

*Coastal States Gas Corp. v. DOE*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................. 9, 11

*Concepcion v. CBP*,
   907 F. Supp. 2d 133 (D.D.C. 2012) ............................................................ 20

*CREW v. DOJ*,
   746 F.3d 1082 (D.C. Cir. 2014) .................................................................. 15

*Davin v. DOJ*,
   60 F.3d 1043 (3rd Cir. 1995) ...................................................................... 15

*Davis v. FBI*,
   770 F. Supp. 2d 93 (D.D.C. 2011) .............................................................. 17

*Defenders of Wildlife v. Agric. Dept.*,
   311 F. Supp. 2d 44 (D.D.C. 2004) .............................................................. 10

*DOJ v. Landano*,
   508 U.S. 165 (1993) .................................................................................... 16

*DOJ v. Reporters Comm.*,
   489 U.S. 749 (1989) ................................................................................... 5, 6

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ...................................................................................... 5

*Dunaway v. Webster*,
   519 F. Supp. 1059 (N.D. Cal. 1981) ........................................................... 13

*EFF v. CIA*,
   2013 WL 5443048 (N.D. Cal. 2013) ............................................... 11, 16, 17, 22

*EFF v. DOJ*,
   2014 WL 3945646 (N.D. Cal. 2014) ......................................................... 6, 23

*EFF v. DOJ*,
   2015 WL 6673743 (D.D.C. 2015) ................................................................. 6

*EFF v. DOJ*,
   826 F. Supp. 2d 157 (D.D.C. 2011) .............................................................. 8

*Exxon Corp. v. DOE*,
   585 F. Supp. 690 (D.D.C. 1983) ................................................................. 10

*Feshbach v. SEC*,
  5 F. Supp. 2d 774 (N.D. Cal. 1997) ............................................................... 6

*Gilman v. DHS*,
  32 F. Supp. 3d 1 (D.D.C. 2014) ..................................................................... 21

*Ibrahim v. DHS*,
  2013 WL 1703367 (N.D. Cal. 2013) ............................................................... 9

*Interior Dept. v. Klamath Water Assn.*,
  532 U.S. 1 (2001) ..................................................................................... 5, 7, 8

*Islamic Shura Council v. FBI*,
  635 F.3d 1160 (9th Cir. 2011) ...................................................................... 23

*Jones v. FBI*,
  41 F.3d 238, 243 (6th Cir. 1994) .................................................................. 24

*Kamman v. IRS*,
  56 F.3d 46 (9th Cir. 1995) ............................................................................. 6

*King v. DOJ*,
  830 F.2d 210 (D.C. Cir. 1987) ....................................................................... 6

*Kowack v. Forest Service*,
  766 F.3d 1130 (9th Cir. 2014) ..................................................................... 6, 9

*Kurdyukov v. U.S. Coast Guard*,
  657 F. Supp. 2d 248 (D.D.C. 2009) ............................................................... 20

*Light v. DOJ*,
  968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................. 18, 19

*Maricopa Audubon Soc. v. Forest Service*,
  108 F.3d 1089 (9th Cir. 1997) ........................................................................ 9

*Maydak v. DOJ*,
  254 F. Supp. 2d 23 (D.D.C. 2003) ................................................................. 15

*Mead Data Cent., Inc. v. Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ....................................................................... 6

*Miller v. DOJ*,
  562 F. Supp. 2d 82 (D.D.C. 2008) ................................................................. 20

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ...................................................................................... 5

*North Pacifica, LLC v. City of Pacifica*,
  274 F. Supp. 2d 1118 (N.D. Cal. 2003) ......................................................... 11

*NRDC v. DOD*,
  388 F. Supp. 2d 1086 (C.D. Cal. 2005) ...................................................... 9, 22

iv

*Pacific Fisheries v. United States*,
   539 F.3d 1143 (9th Cir. 2008) ............................................................. 22

*PHE, Inc. v. DOJ*,
   983 F.2d 248 (D.C. Cir. 1993) .............................................................. 21

*Pons v. Customs Service*,
   1998 U.S. Dist. LEXIS 6084 (D.D.C. 1998) ...................................... 18, 19

*Quinon v. FBI*,
   86 F.3d 1222 (D.C. Cir. 1996) ................................................................ 6

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
   2016 WL 427363 (N.D. Cal. 2016) ....................................................... 10

*Rosenfeld v. DOJ*,
   57 F.3d 803 (9th Cir. 1995) ........................................................ 13, 15, 16

*Roth v. DOJ*,
   642 F.3d 1161 (D.C. Cir. 2011) ............................................................ 15

*Skinner v. DOJ*,
   744 F. Supp. 2d 185 (D.D.C. 2010) ...................................................... 20

*Spirko v. USPS*,
   147 F.3d 992 (D.C. Cir. 1998) .............................................................. 23

*Stolt-Nielsen Ltd. v. United States*,
   534 F.3d 728 (D.C. Cir. 2008) ........................................................ 13, 22

*Sussman v. Marshals Service*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 13

*United States v. Rozet*,
   183 F.R.D. 662 (N.D. Cal. 1998) ............................................................ 8

*United States v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ................................................................ 11

*United States v. Torf*,
   357 F.3d 900 (9th Cir. 2003) ................................................................ 10

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ................................................................ 6

*Weisberg v. DOJ*,
   705 F.3d 1344 (D.C. Cir. 1983) .............................................................. 6

*Wiener v. FBI*,
   943 F.2d 972 (9th Cir. 1991) .......................................................... 16, 22

*Willamette Indus. v. United States*,
   689 F.2d 865 (9th Cir. 1982) ................................................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES**

5 U.S.C. § 551(1) ...................................................................................... 8

5 U.S.C. § 552(a) ............................................................................... 6, 23

5 U.S.C. § 552(b) .............................................................................*passim*

5 U.S.C. § 552(f) ...................................................................................... 8

**RULES**

Fed. R. Civ. P. 26 .................................................................................... 10

Fed. R. Civ. P. 56(a) ............................................................................... 6

**OTHER AUTHORITIES**

ACLU, *Creepy Government Surveillance Shouldn't Be Kept Secret* ............................... 24

Associated Press, *Drug Agents Plumb Vast Database of Call Records*, S.F. Examiner (9/3/13) .... 24

*DEA Programs: High Intensity Drug Trafficking Areas (HIDTAs)* .................................. 3

EFF, *Hemisphere: Law Enforcement's Secret Call Records Deal with AT&T* ............................ 24

EPIC, *EPIC v. DEA – Hemisphere* ................................................................ 24

Evan Perez, *DEA Program Linked to Vast AT&T Database*, CNN (9/2/13) .................................. 24

Kevin Collier, *AT&T Has a Record of Everywhere You've Carried Your Phone,* The Daily Dot
(9/2/13) ...................................................................................... 24

Mike Levine, *DEA Program Puts Phone Company Inside Government Offices*,
ABC News (9/1/13) ............................................................................. 24

ONDCP, *Los Angeles HIDTA* ...................................................................... 3

Scott Shane and Colin Moynihan, *Drug Agents Use Vast Phone Trove, Eclipsing N.S.A.'s*, New
York Times (9/1/13) ........................................................................... 1

Case No. 15-03186-MEJ    NOT. OF MOT. AND CROSS MSJ AND OPP. TO DEF'S MSJ

## MEMORANDUM OF POINTS AND AUTHORITIES

The Hemisphere Project is a massive dragnet surveillance program funded and coordinated by federal agencies including the U.S. Drug Enforcement Agency (DEA). Through Hemisphere, police across the country access a database of trillions of domestic and international phone call records dating from 1987 to the present. Police use Hemisphere to rapidly identify the associates, phone numbers, and locations of suspects, typically with no judicial review – raising profound Fourth Amendment questions. In fact, government officials for years systematically hid Hemisphere from the courts and the public.

This Freedom of Information Act (FOIA) lawsuit challenges the defendant's withholding of DEA information about Hemisphere. Of the 259 currently disputed pages, defendant withholds about half in full, and the remainder are heavily redacted. Defendant asserts FOIA Exemptions 5 (discovery privileges), 7(A) (interference with law enforcement proceedings), 7(D) (confidential law enforcement sources), and 7(E) (law enforcement techniques).[1] Defendant has failed to prove it may withhold the disputed information under these exemptions, and has failed to segregate and release non-exempt information. Thus, this Court should grant plaintiff's motion for summary judgment and order defendant to disclose all of the disputed information. If this Court has any doubts, plaintiff urges this Court to review *in camera* the disputed records.

## STATEMENT OF FACTS

### I.    The Hemisphere Program Allows Law Enforcement Access to Trillions of Pieces of Data on Americans' Sensitive Phone Calls

On September 1, 2013, the *New York Times* reported on the existence of a secret partnership between telecommunications provider AT&T and law enforcement officials known as "Hemisphere."[2] This program had never before been disclosed by any law enforcement agency or reported on by the press. According to limited records released as part of that reporting and

---

[1] Plaintiff does not contest defendant's withholding of employee identifying information under Exemptions 6, 7(C), and 7(F). *Accord* Dkt. 19 (Def. Mot.) at 4, 11-12, 15, 21-22; Dkt. 20 (Scharf Decl.).

[2] *See* Scott Shane and Colin Moynihan, *Drug Agents Use Vast Phone Trove, Eclipsing N.S.A.'s*, New York Times (9/1/13), *available at* http://www.nytimes.com/2013/09/02/us/drug-agents-use-vast-phone-trove-eclipsing-nsas.html.

subsequent public records requests, the program involves the placement of AT&T employees within law enforcement facilities to assist law enforcement access to trillions of electronic call detail records (CDRs) of Americans dating back to 1987.

CDRs contain a phone user's dialing, routing, and location information. AT&T has access not only to the records of AT&T subscribers but also to the records of anyone whose phone service provider uses an AT&T switch to process a telephone call.[3] This allows AT&T to add four billion CDRs to its database every day.[4]

With this vast database of records, AT&T can perform complicated phone pattern analysis to map social networks, determine whom a person communicates with, find multiple phone numbers used by a single person, and discover where a person was when making a phone call. If a person "drops" or "rotates" a phone and gets a new phone, AT&T can analyze the calling patterns associated with the dropped phone to determine the phone's replacement.[5]

Through the Hemisphere program, AT&T shares all of this data with law enforcement. Because the program obtains CDRs on a "near real-time basis," agents can get records within one or two hours after the call was made.[6] A 2013 email broadly disseminated among law enforcement users described Hemisphere as "Google on Steroids" and a "super search engine."[7]

The federal, state, and local law enforcement agencies with access to Hemisphere are part of the High Intensity Drug Trafficking Areas (HIDTA) program, administered by the White House's Office of National Drug Control Policy (ONDCP).[8] ONDCP is an agency that "provides assistance to Federal, state, local, and tribal law enforcement agencies operating in areas determined to be critical drug-trafficking regions of the United States."[9] That assistance includes

---

[3] *See* Ex. 1 (*Los Angeles Hemisphere*) at 2. *Accord* Ex. 2 (*Hemisphere Synopsis*) at 3-4. Both reports are available at https://www.eff.org/cases/hemisphere.

[4] *Los Angeles Hemisphere* at 2.

[5] *Hemisphere Synopsis* at 3, 9; *Los Angeles Hemisphere* at 5-6, 20.

[6] *Hemisphere Synopsis* at 2, 5; *Los Angeles Hemisphere* at 3.

[7] *See* Ex. 3 (email of 9/14/13, from Los Angeles HIDTA to Task Fore Commanders and Initiative Managers, titled "Hemisphere Program articles and scrutiny").

[8] ONDCP, "High Intensity Drug Trafficking Areas Program," *available at* https://www.whitehouse.gov/ondcp/high-intensity-drug-trafficking-areas-program.

[9] *Id.*

intelligence sharing between law enforcement agencies nationwide. ONDCP has awarded about $1 million per year just to the Hemisphere Regional Center in Houston (one of three such Regional Centers), which then pays AT&T directly.[10]

The DEA explains it plays "a very active role" in the HIDTA program and has almost 600 special agents dedicated to it.[11] The DEA funds Hemisphere, and is one of the most frequent Hemisphere requesters.[12]

Hemisphere also processes requests from other federal agencies, including FBI and DHS; state agencies such as the Washington Department of Corrections; and local agencies, including police departments in Montclair and Redondo Beach, California, and Tacoma, Washington.[13] Between 2007 and 2013, the Hemisphere Regional Center in Los Angeles alone processed over 4,400 requests involving over 11,200 phone numbers.[14]

The government appears to believe law enforcement officers do not need a warrant to access AT&T's treasure trove of sensitive data. According to a report titled "Hemisphere Synopsis": "An administrative subpoena is all that is needed to obtain Hemisphere results and work product."[15] The DEA has disseminated a model administrative subpoena form for Hemisphere.[16]

---

[10] *See* Ex. 4, a group exhibit of the following records from government units in Harris County, Texas: 10/1/08 conveyance form (reporting $950,000 in 2009 from the ONDCP); 6/3/09 and 5/5/10 conveyance forms (reporting $900,000 in 2009 and 2010 from the ONDCP); 1/14/08 letter (reporting $944,321 to AT&T); 3/10/09 agenda (reporting $910,705 to AT&T). Additional documentation of this funding stream is available at https://www.eff.org/cases/hemisphere.

[11] *DEA Programs: High Intensity Drug Trafficking Areas (HIDTAs)*, *available at* http://www.dea.gov/ops/hidta.shtml.

[12] *Los Angeles Hemisphere* at 2, 4, 16. Moreover, the DEA was "the lead agency" in a task force that provided Hemisphere training in 2013. *See* Ex. 5 (email of 8/5/13, from the Southern California Drug Task Force, titled "LA HIDTA Supervisor Training," discussing a "training day" including Hemisphere); ONDCP, *Los Angeles HIDTA* (stating that the DEA is "the lead agency" in the SCDTF), *available at* https://www.ncjrs.gov/ondcppubs/publications/enforce/hidta2001/la-fs.html. Also, the DEA hosted a 2012 meeting for Hemisphere stakeholders. *See* Ex. 6 at 62 (Agenda for "Hemisphere Meeting" on 6/1/12).

[13] *Los Angeles Hemisphere* at 16, 22-23, 26.

[14] *Los Angeles Hemisphere* at 4.

[15] *Hemisphere Synopsis* at 2. *Accord Los Angeles Hemisphere* at 2, 5.

[16] *See* Ex. 7 at 75.

3

Law enforcement agencies have actively hidden Hemisphere from the public and the courts. In one PowerPoint presentation, HIDTA emphasized repeatedly that law enforcement must take steps to "protect" the program by "keep[ing] the program under the radar."[17] As a result, HIDTA informs officers making requests "to never refer to Hemisphere in any official document," and in cases where "there is no alternative to referencing a Hemisphere request, then the results should be referenced as information obtained from an AT&T subpoena."[18] The HIDTA PowerPoint stresses that Hemisphere should be used as a "pointer system" that allows law enforcement to do complicated analysis of phone call records to determine alternative phone numbers a suspect may be using, as well as other associates they may be communicating with, and even a phone's physical location.[19] Armed with this analysis, law enforcement is then instructed to use "parallel subpoenas,"[20] that is, to issue a more traditional subpoena or search warrant directly to the phone provider to obtain this information, with the understanding it is this subsequent subpoena or warrant that will be made public and available to criminal defendants through the discovery process. This allows Hemisphere information to be "walled off" from public scrutiny.[21]

## II.    Procedural History of this Case

In February 2014, plaintiff sent the DEA a FOIA request for Hemisphere records. *See* Declaration of Katherine L. Myrick (Myrick Decl.), Dkt. No. 21, Ex. A. In April 2014, plaintiff sent a reformulated request. *See id.*, Ex. D.[22] On April 7, 2015, the DEA advised plaintiff it had located 308 pages of responsive records. *See id.*, Ex. M. The DEA withheld 132 pages in full, and

---

[17] *Los Angeles Hemisphere* at 8.

[18] *Id.* at 12.

[19] *Id.* at 10.

[20] *Hemisphere Synopsis* at 21.

[21] *Los Angeles Hemisphere* at 10.

[22] Specifically, plaintiff asked the DEA to search its headquarters and three field divisions for: (1) DEA policies and training about Hemisphere; (2) information from the DEA's IRFS database about the DEA's use of Hemisphere; (3) communications about Hemisphere between the DEA and AT&T or other phone companies; (4) communications about Hemisphere between the DEA and other law enforcement agencies; (5) contracts about Hemisphere between the DEA and AT&T or other phone companies; (6) communications about Hemisphere between the DEA and five California-based fusion centers; and (7) communications about Hemisphere between the DEA or the DOJ with members of Congress. *See* Myrick Decl., Exhs. A & D.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

released 176 pages, many with heavy redactions, asserting FOIA Exemptions 5, 6 and 7. On April 28, 2015, plaintiff filed an administrative appeal.

In July 2015, plaintiff filed this lawsuit. *See* Complaint, Dkt. No. 1. On December 10, 2015, defendant sent plaintiff a draft *Vaughn* Index. *Cf.* Myrick Decl., Ex. O (final *Vaughn* Index). On December 24, 2015, defendant disclosed 13 pages it had previously withheld in full. *See id.*, Ex. N. In January 2016, plaintiff advised defendant it would no longer challenge defendant's withholding of any parts of the following eight records: 3, 13, 15, 20, 21, 24, 33, and 35 in the final *Vaughn* Index. *See* Scharf Decl., Ex. B. Plaintiff also advised defendant that it was not seeking any identifying information about people involved in Hemisphere, or any contact information about Hemisphere, except for the cities and states where it operates. *Id.* In February 2016, defendant moved for summary judgment. *See* Def. Mot. Sum. J. (Dkt. No. 19).

## ARGUMENT

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Brown v. CBP*, 2015 WL 5535799, *2 (N.D. Cal. 2015), quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

## I.    FOIA Establishes a Presumption of Disclosure, and the Government Bears the Burden of Proving Withheld Information Is Clearly Exempt

FOIA safeguards the American public's right to know "what their Government is up to." *DOJ v. Reporters Comm.*, 489 U.S. 749, 773 (1989). FOIA requires disclosure of all requested records unless they fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Interior Dept. v. Klamath Water Assn.*, 532 U.S. 1, 7-8 (2001). *See also Air Force v. Rose*, 425 U.S. 352, 361 (1976) (the purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny"). The exemptions "have been consistently given a narrow compass." *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989). Where exemptions apply, FOIA requires disclosure of "[a]ny reasonably segregable portion." 5 U.S.C. § 552(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The agency bears the burden of proving that records have been properly withheld, and courts review *de novo* the agency's withholdings. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. Indeed, the agency must prove the withheld information is "clearly exempt." *EFF v. DOJ*, 2014 WL 3945646, *4 (N.D. Cal. 2014), quoting *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986). The agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id.*, quoting *Mead Data Cent., Inc. v. Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). *See also Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (government "may not rely upon conclusory and generalized allegations of exemptions"); *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (government may not "merely recit[e] statutory standards"). To meet their burden, agencies typically submit a "*Vaughn* index" that describes each withheld record and an affidavit from an agency official describing the agency's rationale. *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973); *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987).

FOIA disputes are commonly resolved on summary judgment. *See, e.g., Kowack v. Forest Service*, 766 F.3d 1130, 1132 (9th Cir. 2014). The moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Bothwell v. Brennan*, 2015 WL 6689387 (N.D. Cal. 2015), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party with the burden of proof on an issue (here the agency) must show that no reasonable trier of fact could find against them; but a moving party without the burden of proof (here the requester) need only show an absence of evidence on the other side. *Feshbach v. SEC*, 5 F. Supp. 2d 774, 779 (N.D. Cal. 1997), citing *Celotex Corp.*, 477 U.S. at 323. The underlying facts are viewed "in the light most favorable to the [FOIA] requester." *EFF v. DOJ*, 2015 WL 6673743, *3 (D.D.C. 2015) (bracketed word in original), quoting *Weisberg v. DOJ*, 705 F.3d 1344, 1350 (D.C. Cir. 1983).

## II.    Defendant Has Improperly Withheld Records Under to Exemption 5

Defendant relies on Exemption 5 to withhold in full seven records comprising 35 pages, claiming these records are protected by the attorney-client privilege, work-product privilege, and deliberative process privilege. Exemption 5 provides a narrow exception for "inter-agency or intra-

6

agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has interpreted Exemption 5 to protect records that fall "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Ass'n*, 532 U.S. at 8; *see also Carter v. Commerce Dep't*, 307 F.3d 1084, 1088 (9th Cir. 2002). Defendant has failed to show that the records it withholds fit into any of the narrow privileges available under Exemption 5; therefore, defendant has not met its burden and the records must be disclosed.

For convenience, plaintiff has prepared this chart summarizing defendant's Exemption 5 withholdings of seven records in full under the attorney-client privilege (ACP), work-product privilege (WPP), and deliberative process privilege (DPP):

| Index # | Page # | Document Description | ACP | WPP | DPP |
|---|---|---|---|---|---|
| 1 | 1-12 | Emails with attachments among federal staff including a Deputy Assistant Attorney General addressing Hemisphere legal issues | X | X | X |
| 4 | 16-27 | Draft memorandum by the DEA's Office of Chief Counsel about Hemisphere legal issues | X | X | X |
| 6 | 31-34 | Record about how to use Hemisphere capabilities | | | X |
| 7 | 35-36 | Record about how to use Hemisphere | | | X |
| 25 | 110 | Email in May 2007 about legal issues about Hemisphere and subpoenas | | X | |
| 27 | 253-54 | Emails within DEA including attorneys in November 2007 about Hemisphere Subpoenas | X | X | |
| 32 | 267-68 | Emails in June 2008 about a draft Hemisphere policy | | | X |

**A.    Defendant Has Not Proven that Five Records Are Inter- or Intra-Agency Communications**

Defendant has withheld five records under Exemption 5 without alleging, let alone proving, they were not shared outside the executive branch—a threshold requirement for withholding under Exemption 5. *See Vaughn* Index at 4, 6, 7, 25, and 32. *See also* Myrick decl. at 11-12.

Exemption 5 extends only to "inter-agency or intra-agency" communications. 5 U.S.C. § 552(b)(5). It does not extend to communications outside the federal government. *Center for Intl. Envtl. Law v. Trade Rep.*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002). As the Supreme Court has held, "[s]tatutory definitions underscore the apparent plainness of the text[;] . . . 'agency' means 'each authority of the Government of the United States' and 'includes any executive department, military

department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency." *Klamath Ass'n*, 532 U.S. at 9, citing 5 U.S.C. §§ 551(1) , 552(f). "In general, this definition establishes that communications between agencies and outside parties are not protected under Exemption 5." *Ctr. for Int'l Envtl. Law*, 237 F. Supp. 2d at 25. Thus, when a document is shared outside an agency—even in draft form—the document may not be withheld under Exemption 5.

Defendant's silence on this point speaks volumes. Hemisphere involves many parties outside the federal government, including state and local police and private corporations. *See supra* at 1-3. Other Hemisphere records disclosed by the DEA to plaintiff were communicated outside the federal government. *See, e.g.,* Ex. 5 (email of 8/5/13 to participants in HIDTA training about Hemisphere). By way of comparison, defendant has specifically alleged that two records withheld under Exemption 5 were not disclosed outside the federal government. *See Vaughn* Index at 1 (alleging the communication was "among federal government employees"), and 27 (alleging the communication was "internal-DEA").

In short, defendant has not shown that five records were not communicated outside the federal government, and defendant thus cannot withhold them under Exemption 5.

## B.   Defendant Has Improperly Withheld Records Under the Deliberative Process Privilege

Defendant has claimed Exemption 5's deliberative process privilege allows it to withhold in their entirety five records comprising 32 pages. Because defendant has failed to adduce any specific information about these records showing they are pre-decisional and deliberative, and contain no purely factual information, the records must be released.

The deliberative process privilege applies only to records that are both pre-decisional and deliberative. *Carter*, 307 F.3d at 1089. The agency "bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998). *See also EFF v. DOJ*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (because "the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process,"

the agency must explain each document's "content" and "context," including the "decisionmaking process," the "function and significance of the document" in that process, the "nature of the decisionmaking authority" of the document's author, and the "positions in the chain of command" of the document's recipients). Also, the agency "must identify a specific decision to which the document is predecisional." *Ibrahim v. DHS*, 2013 WL 1703367, *6 (N.D. Cal. 2013), quoting *Maricopa Audubon Soc. v. Forest Service*, 108 F.3d 1089, 1094 (9th Cir. 1997). Moreover, "factual material that does not reveal the deliberative process is not protected." *Kowack*, 766 F.3d at 1135.

Here, defendant provides none of the mandated information. It submits no proof about the identity or character of the decisions at issue, the deliberations involved, or the role of the records. Rather, the *Vaughn* Index states only that two records were "intended to facilitate or assist development of the agency's final position on aspects of the use of Hemisphere and does not itself establish a final policy." *See Vaughn* Index at 1 and 4. Its explanation for three other records merely parrots the privilege's rules and policy. *Id.* at 6, 7, and 33.[23] Defendant's opening brief and supporting declaration shed no further light. Mot. at 9-11; Myrick Decl. at 10-12.

Moreover, a pre-decisional document can lose that status "if it is adopted, formally or informally, as the agency position on an issue." *NRDC v. DOD*, 388 F. Supp. 2d 1086, 1098 (C.D. Cal. 2005), citing *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980). Here, defendant has failed to identify a specific decision to which the disputed records preceded and contributed. Rather, defendant rests on conclusory boilerplate. Thus, the disputed records should be treated as final agency positions, and they must be disclosed. *See, e.g., Exxon Corp. v. DOE*, 585 F.

---

[23] Specifically, defendant writes: "The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making. The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions, or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion regarding a decision. If preliminary opinions, evaluations, and comments would be released for public consumption, all sources contributing to agency policy might be more circumspect in what they put in writing, and thereby, impede a complete and candid discussion of the issues surrounding a decision."

Supp. 690, 698 (D.D.C. 1983) ("In some instances where DOE has failed to identify a final document corresponding to a putative draft, the 'draft' shall be ordered produced to the extent that the agency has provided no basis for determining that it in fact has such status.").

Finally, defendant characterizes one record as a "draft." *See Vaughn* Index at 5. But this does not "automatically trigger proper withholding." *Defenders of Wildlife v. Agric. Dept.*, 311 F. Supp. 2d 44, 58 (D.D.C. 2004). For the above reasons, the record must be disclosed.

### C. Defendant Has Improperly Withheld Records Under the Work-Product Privilege

Defendant has claimed the work-product privilege to withhold in full four records containing 27 pages. However, its *Vaughn* Index, opening brief, and supporting declaration fail to show any of the factors necessary to claim the privilege.

The work-product privilege protects records that are "prepared in anticipation of litigation or for trial." *United States v. Torf*, 357 F.3d 900, 907 (9th Cir. 2003) , quoting Fed. R. Civ. P. 26(b)(3). It does not protect records created "in the ordinary course of business." *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 2016 WL 427363 (N.D. Cal. 2016), quoting the 1970 Advisory Committee Note. The agency "must identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document." *Church of Scientology v. DOJ*, 30 F.3d 224, 237 (1st Cir. 1994).

Defendant's *Vaughn* Index makes only the conclusory assertion that the documents it withheld under the work-product privilege were prepared by government lawyers "in anticipation of litigation relating to the use of Hemisphere in law enforcement." *See Vaughn* Index at 1, 4, 25, and 27; *see also* Mot. at 9-11, Myrick Decl. at 10-12. Defendant fails to identify the litigation for which the documents were prepared and fails to explain why the work-product privilege applies to *all* portions of the records. For these reasons, the records should be released.

### D. Defendant Has Improperly Withheld Records Under the Attorney-Client Privilege

Defendant has withheld in full three records containing 26 pages based on the attorney-client privilege. Because defendant has failed to provide anything more than a conclusory assertion that the privilege applies, it has failed to meet its burden, and the records should be released.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Communications between an agency and its attorney are privileged only "if they contain information communicated by the attorney in confidence for the purpose of obtaining legal advice, the attorney was acting in her capacity as a lawyer, the communications were related to the purpose of obtaining legal advice, and the [agency] did not waive attorney-client protection." *ACLU v. FBI*, 2015 WL 7251928, *3 (N.D. Cal. 2015), *citing United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The privilege does not apply "simply because the communication involves the government's counsel." *Id.* The communication must be "circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Center for Biological Diversity v. OMB*, 2009 WL 1246690, *9-10 (N.D. Cal. 2009), quoting *Coastal States Gas Corp.*, 617 F.2d at 863. The privilege should be "narrowly construed," especially in cases involving "important constitutional interests and a public entity." *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1128 (N.D. Cal. 2003). An agency cannot rest on "boilerplate" that does not "tailor the explanation to the specific document withheld." *EFF v. CIA*, 2013 WL 5443048, *16 (N.D. Cal. 2013).

Here, defendant does not provide specific information about its assertion of the attorney-client privilege. For example, it does not identify the particular people who had access to the disputed records, and what role if any they had in discussions of Hemisphere. This information is needed to determine whether the DEA waived the privilege by circulating the disputed records beyond the discrete set of DEA staff that the agency has authorized to speak or act regarding Hemisphere. Instead, defendant rests solely on the legal conclusion that the records contain "confidential legal advice" about Hemisphere issues. *See Vaughn* Index at 1, 4, and 27; Mot. at 9-11; Myrick Decl. at 10-12. Thus, defendant has failed to meet its burden of proof.

////

////

////

////

////

////

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    Defendant Has Improperly Withheld Records Under Exemption 7

FOIA exempts certain kinds of records "compiled for law enforcement purposes." 5 U.S.C.

§ 552(b)(7). For convenience, this chart describes all 27 disputed records that defendant has

withheld under sections 7(A), 7(D), and 7(E).

| # | Page # | Document Description | A | D | E |
|---|--------|----------------------|---|---|---|
| 1 | 1-12 | Emails with attachments among federal staff including a Deputy Assistant Attorney General addressing Hemisphere legal issues | X | X | X |
| 2 | 13-14 | Emails within DEA from August 2008 through September 2012 about Hemisphere, subpoenas, and use of Hemisphere | X | X | X |
| 4 | 16-27 | Draft memorandum by the DEA's Office of Chief Counsel about Hemisphere legal issues | X | X | X |
| 5 | 28-30 | Slides about Hemisphere users, providers, and subpoenas | X | X | X |
| 6 | 31-34 | Record about how to use Hemisphere capabilities | X | X | X |
| 7 | 35-36 | Record about how to use Hemisphere | X | X | X |
| 8 | 37-39 | Document used in connection with Hemisphere | X | X | X |
| 9 | 40-41 | Hemisphere request form | X | | X |
| 10 | 42-46 | Emails with attachments within DEA in October 2008 about Hemisphere use and subpoenas | X | X | X |
| 11 | 47-48 | Hemisphere request form | X | | X |
| 12 | 49-50 | Slides about Hemisphere subpoenas | X | X | X |
| 14 | 53-55 | A form court order for California Superior Court | X | X | X |
| 16 | 59-72 | Emails with attached agenda and charts within DEA in May 2012 about a Hemisphere meeting in June 2012 | | X | X |
| 17 | 73-77 | Emails of May 2012 with attachments about Hemisphere requests | X | X | X |
| 18 | 78-79 | Email in September 2013 about Hemisphere articles and scrutiny | | X | X |
| 19 | 80-95 | Email of December 2013 from L.A. HIDTA with attached data slides | X | X | X |
| 22 | 100-05 | Emails and attachments in October 2010 and September 2012 titled "request form and contract" | X | X | X |
| 23 | 106 | DEA subpoena form | X | X | X |
| 25 | 110 | Email in May 2007 about legal issues about Hemisphere and subpoenas | | X | X |
| 26 | 111-252 | Hemisphere tutorial | X | X | X |
| 27 | 353-54 | Emails within DEA including attorneys in November 2007 about Hemisphere Subpoenas | X | X | X |
| 28 | 255-59 | Email with attachments within DEA in January 2008 about Hemisphere subpoena protocols | X | X | X |
| 29 | 260-64 | Unsolicited Hemisphere proposal in August 2007. | X | X | X |
| 30 | 265 | Email within DEA in November 2007 about Hemisphere changes | | X | X |
| 31 | 266 | Email within DEA in January 2008 about Hemisphere subpoenas | | X | X |
| 32 | 267-68 | Emails in June 2008 about a draft Hemisphere | | X | X |
| 34 | 278-82 | Hemisphere Summary | X | X | X |

A.      **Defendant Has Improperly Withheld Records Under Exemption 7(A)**

Defendant has withheld records under Exemption 7(A), arguing their release "could reasonably be expected to interfere with a law enforcement proceeding." Mot. at 13. However, Defendant has failed to provide specific information about the impact of the disclosures on actual law enforcement proceedings. As such they must be released.

Even if the disputed records were to contain some information that defendant may withhold under Exemption 7(A), defendant still must segregate and disclose all non-exempt information from those records. *See* 5 U.S.C. § 552(b). Defendant cannot meet this burden with a conclusory affidavit attesting only that an agency employee "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act." *Stolt-Nielsen Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008). Here, defendant's *Vaughn* Index and declaration fail to show why defendant could not segregate and disclose more information, especially from the more than 100 pages that defendant withholds in full. *See infra* Part IV.

FOIA exempts law enforcement records if disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). If the proceeding is prospective, it must be "concrete." *Bevis v. State Dept.*, 801 F.2d 1386, 1389 (D.C. Cir. 1986). The agency must submit "specific information about the impact of the disclosures." *Sussman v. Marshals Service*, 494 F.3d 1106, 1114 (D.C. Cir. 2007). For example, "it is not sufficient for an agency merely to state that disclosure would reveal the focus of an investigation; it must rather demonstrate *how* disclosure would reveal that focus." *Id.* (emphasis in original).[24]

Here, defendant withholds 21 records, in full or in part, under this exemption. *See Vaughn* Index at 1-2, 4-12, 14, 17, 19, 22-23, 26-29, 34. In support, defendant's *Vaughn* Index only restates the statutory language: "Material the disclosure of which could reasonably be expected to interfere with enforcement proceedings." *Id.* The Index does not provide any specific information about the

---

[24] The "rational nexus" test applies to whether there is a "law enforcement purpose"—the threshold requirement to apply Exemption 7. *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995). Contrary to defendant's suggestion (Mot. at 14), it does not apply to whether there is "interference" under Exemption 7(A). *See Binion v. DOJ*, 695 F.2d 1189, 1193-94 (9th Cir. 1983); *Church of Scientology v. Dept. of Army*, 611 F.2d 738, 748 (9th Cir. 1979); *Dunaway v. Webster*, 519 F. Supp. 1059, 1075 (N.D. Cal. 1981).

alleged proceedings, such as whether they are current or prospective, and if prospective whether they are concrete. Nor does it provide any specific information about how disclosure might interfere with these proceedings.

Defendant's brief adds little more. It argues (and plaintiff agrees) that Hemisphere is a law enforcement tool used by multiple law enforcement agencies to support existing investigations. *See* Mot. at 14. But this only helps defendant meet the Exemption 7 threshold that the records were "compiled for law enforcement purposes." It does not tend to show, as required by Exemption 7(A), that disclosure "could reasonably be expected to interfere with enforcement proceedings." Defendant's brief then asserts—without evidence or even explanation—that disclosure "could reasonably be expected to assist targets who could then use this information to evade law enforcement." *See* Mot. at 14-15. Given the information about Hemisphere that is already in the public domain, *see supra* at 1-4, there is no reason to presume this.

For example, defendant has heavily redacted a five-page record comprised of a transmittal email with three attachments about Hemisphere requests. *See* Ex. 7 (5/22/12 email). Specifically, defendant has redacted all of a DEA subpoena and two explanatory slides except for their titles, and the second half of the Hemisphere request form. Given that criminals already know that police are using Hemisphere to locate their "burner" phones and analyze their social networks, it is highly doubtful that disclosure of more of this record would interfere with police activity. Defendant's boilerplate submissions do not show any hazard of such interference.

Also, defendant has withheld most of a 15-page report of Hemisphere statistics in November 2013. *See* Ex. 8 (12/6/13 email with attached "combined hemi stats for Nov. 2013"). Defendant redacted four pages in full, and redacted eight pages except for the slide titles. Defendant does not explain, for example, how any proceeding might be impeded by disclosure of a slide stating the number of requests to each Hemisphere Regional Center in November 2013.

## B.     Defendant Has Improperly Withheld Records Under Exemption 7(D)

Defendant has withheld the identity of private-sector companies from 25 records, arguing these companies are "instrumental" to Hemisphere and as such should be considered "confidential sources." *See Vaughn* Index at 1-2, 4-8, 10, 12, 14, 16-19, 22-23, 25-32, 34; *see also* Mot. at 16,

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Myrick Decl. at 15. However, defendant has failed to show those companies shared information with the agency under either an express or implied assurance of confidentiality. As such, defendant has failed to meet its burden under exemption 7(D), and the records should be released.

FOIA exempts law enforcement records if disclosure "could reasonably be expected to disclose the identity of a confidential source, including . . . any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). "The mere fact that a person or institution provides information to a law enforcement agency" does not establish that they are a "confidential source." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998).

The threshold question is whether the sources are actually "confidential." 5 U.S.C. § 552(b)(7)(D). Confidentiality can be shown by (1) "express assurance," or (2) "circumstances from which such assurance could be reasonably inferred." *Rosenfeld v. DOJ*, 57 F.3d 803, 814 (9th Cir. 1995). Defendant does not satisfy either test.

To show "express assurance," the agency must "present sufficient evidence that such an assurance was in fact given." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011). An agency declaration that "simply asserts" the existence of express assurance, "without providing any basis for the declarant's knowledge," will not suffice. *Campbell*, 164 F.3d at 34-35. *See also CREW v. DOJ*, 746 F.3d 1082, 1101 (D.C. Cir. 2014) ("boilerplate will not do"); *Davin v. DOJ*, 60 F.3d 1043, 1061 (3rd Cir. 1995) ("[I]f an agency attempts to withhold information under Exemption 7(D) by *express* assurances of confidentiality, the agency is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality.") (emphasis in original); *Maydak v. DOJ*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (declining to find express assurance based on a declaration lacking personal knowledge).

Here, defendant does not assert, let alone show, that the agency gave any "express *assurance*" of confidentiality. Rather, defendant only asserts the companies had "the express *expectation*" of confidentiality. *See* Myrick Decl. at 15 (emphasis added). A source's expectation is no substitute for an agency's assurance. Further, defendant's declaration does not assert personal knowledge or any other factual basis for its assertion about any company's expectations. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant has also failed to show the companies participated in the Hemisphere program under an implied assurance of confidentiality. A claim of implied confidentiality "requires the court to engage in a highly contextual, fact-based inquiry." *Wiener v. FBI*, 943 F.2d 972, 986 (9th Cir. 1991). The agency must "state the circumstances surrounding the receipt of information" that led the agency to conclude the source "would not have given the information without an implicit assurance of confidentiality." *Id.* at 987. Here, defendant asserts only one such circumstance: "providing information can lead to retaliation against the companies." But in *DOJ v. Landano*, 508 U.S. 165 (1993), the Court held that an "implied understanding of confidentiality" cannot rest solely on the possibility that a private institution "might be subject to possible legal action or loss of business if their cooperation with [law enforcement] became publicly known." *Id.* at 176. Further, the public has known for two and a half years that AT&T is part of Hemisphere, *see supra* 1, yet defendant proffers no evidence that AT&T suffered any resulting retaliation. If other providers or companies have been involved in the Hemisphere program, it is unlikely that their fate would be different from AT&T's. These records should be disclosed.

### C.  Defendant Has Improperly Withheld Records Under Exemption 7(E)

Defendant withheld a vast amount of records under Exemption 7(E), claiming that many details of the program have not been disclosed to the public and therefore "remain sensitive." Mot. at 17. However, defendant has failed to show how release of these records would actually allow criminals to "evade detection or disrupt Hemisphere's operations." Mot. at 19 (citing Myrick Decl. at ¶ 58.f). As such, the records should be released.

FOIA exempts law enforcement records if release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption "only extends to investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. The agency must show "for each specific withholding" how the withheld information "goes beyond a generally known technique." *EFF v. CIA*, 2013 WL 5443048, *23 (N.D. Cal. 2013). *See also Banks v. DOJ*, 813 F. Supp. 2d 132, 146 (D.D.C. 2011) (rejecting the assertion of Exemption 7(E) based on a

16

conclusory declaration); *Davis v. FBI*, 770 F. Supp. 2d 93, 101 (D.D.C. 2011) (same). As set forth below, defendant has failed to meet this burden.

*Cities and States*. Defendant withholds from ten records information regarding the cities or states in which Hemisphere is located or in which agencies have had contact with the Hemisphere program. *See Vaughn* Index at 4, 6, 9-11, 17-18, 23, 26, 28. As defendant notes, plaintiff does not seek other contact information such as phone numbers and street addresses. *See* Mot. at 18.

Defendant asserts this information "could be used by criminals to disrupt law enforcement operations or obtain unauthorized access to information about such operations." *See* Mot. at 18; Myrick Decl. at 16. But defendant does not explain how criminals could use information about the cities and states where Hemisphere is being used to do this. Moreover, the public already knows that Hemisphere has regional centers in Atlanta, Houston, and Los Angeles, and that Hemisphere is used in other cities. *See supra* at fn. 8. Defendant has presented no evidence that, using this publicly available information, criminals have been able to "disrupt law enforcement operations or obtain unauthorized access to information." Mot. at 18; Myrick Decl. at 16. Other courts have rejected the assertion of Exemption 7(E) over information identifying the "field office" conducting an investigation, where as here there was no specific justification for withholding this information. *EFF v. CIA*, 2013 WL 5443048, *23 (N.D. Cal. 2013).

*Companies*. Defendant withholds from 22 records the identity of companies that defendant states are "instrumental" to Hemisphere. *See Vaughn* Index at 1-2, 5-8, 10, 12, 16-18, 22-23, 25-32, 34. Defendant asserts criminals could use this information to "tailor or adapt their activities to evade apprehension," or "to attack facilities involved in the Hemisphere program." *See* Myrick Decl. at 17. *See also* Mot. at 19.

But the public has known for two and a half years that AT&T supports Hemisphere, *see supra* at 1, and defendant does not assert that criminals have ever attempted to use this information to evade or disrupt Hemisphere. Moreover, the public knows that the Hemisphere database includes the vast number of non-AT&T calls that pass through AT&T switches. *See supra* at 2. So under defendant's theory, the criminal element already has the motive and opportunity to evade or disrupt the many non-AT&T carriers that use AT&T switches. Not only is it highly improbable that

17

criminals would be able to evade AT&T switches or be able to "attack facilities involved in the Hemisphere program," defendant presents no evidence any of this has occurred in the past or is even possible to occur in the future.

*Agencies*. Defendant withholds from 12 records the identity of law enforcement agencies that "have access" to Hemisphere. *See Vaughn* Index at 1, 4, 6, 16, 18-19, 22-23, 26, 28, 31, 34. Defendant argues this information would allow criminals to "tailor or adapt their activities to evade apprehension," because "every law enforcement agency has its own individual focus and sphere of authority." *See* Mot. at 21; Myrick Decl. at 16.

But it is already publicly known that a vast number of law enforcement agencies have access to Hemisphere. The program has been "rolled out across the country," and a goal is "to ensure that Hemisphere reaches the maximum number of users," according to the "Hemisphere Synopsis." *See* Ex. 2 at 11. The 28 multi-agency HIDTAs provide federal, state, and local agencies with access to Hemisphere and are located in counties with more than 60% of the U.S. population. *See supra* at fn. 8. The Hemisphere Regional Centers, which are located in Atlanta, Houston, and Los Angeles, process requests from federal agencies (*e.g.*, the DEA, FBI, and DHS), state agencies (*e.g.*, the Washington Department of Corrections), and local agencies (*e.g.*, police departments in Montclair and Redondo Beach, California, and Tacoma, Washington). *See supra* at 3. In short, criminals already know that federal agencies across the nation are using Hemisphere, and that state and local police agencies, large and small, can and do use Hemisphere, too. Defendant has not presented any evidence that, armed with this knowledge, criminals have "tailor[ed] or adapt[ed] their activities to evade apprehension." Mot. at 21; Myrick Decl. at 16.

Defendant cites to *Light v. DOJ*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013) and *Pons v. Customs Service*, 1998 U.S. Dist. LEXIS 6084 (D.D.C. 1998) to argue that, if criminals know which particular agencies have access to Hemisphere, it "could help [them] to tailor or adapt their activities to evade apprehension." Mot. at 21. However, these cases are distinguishable. The records in *Light* disclosed the location, identity, and expertise of the FBI's *own* investigative units. 968 F. Supp. 2d at 29. But here, the disputed records do not show how any particular agency deploys its own scarce resources among different units and locations. The records in *Pons*

18

identified the particular agencies that helped the Customs Service prosecute the particular FOIA requester. On the other hand, the records here do not address how any agency investigated any specific person. Thus, the records here do not raise the concerns in *Pons* or *Light*.

**Requests, processing, responses, and capabilities.** Defendant withholds four related categories of information that it claims, if released, would allow criminals to "tailor or adapt their activities to evade apprehension." *See* Myrick Decl. at 16-17; Mot. at 19-21. These are:

- "Internal procedures and guidelines for making Hemisphere requests." *Vaughn* Index at 1-2, 4-12, 14, 17, 19, 22-23, 25-32, 34.

- "Details regarding how Hemisphere requests are routed and processed and how resources are organized and deployed." *Id.* at 1-2, 4-7, 10, 16, 19, 22, 26, 28-29, 31-32.

- "Details about how Hemisphere results and output are delivered to and presented to law enforcement." *Id.* at 4, 22, 26, 29, 34.

- "Technical details about how Hemisphere works and details about the specific capabilities and limitations of Hemisphere." *Id.* at 1, 4-8, 10, 16, 22, 26-29, 34.

Defendant has failed to show *how* criminals might use this information to evade apprehension. For two and one half years, the public has known that police across the nation have had access to a vast database of trillions of records of calls passing through AT&T switches and that police routinely use this database to identify "burner" phones and to scrutinize the social networks of suspects. *See supra* at 1-3. In light of what criminals already know about the Hemisphere program broadly, defendant has not shown that release of information about the processing of Hemisphere requests would somehow disclose a law enforcement technique.

For example, defendant has redacted all the aggregate statistical data in a 23-page report titled "Hemisphere L.A. Requests Stats 2008." *See* Ex. 9. Yet the Los Angeles Clearinghouse, which operates the Los Angeles Hemisphere Regional Center, disclosed this same report to plaintiff with far fewer redactions. *See* Ex. 10. In the first data slide, defendant only disclosed the title ("Hemisphere monthly requests"), while the Los Angeles Center also disclosed the number of requests in each of six months (ranging from 55 to 90). *Compare* Ex. 9 at 287; *with* Ex. 10 at 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant has not shown that the Los Angeles Center's release of this or any other detailed information in the report has allowed criminals to "tailor or adapt their activities to evade apprehension," and it is difficult to imagine how this information might empower criminals. Plaintiff has posted both versions of this report on its website.[25]

Likewise, defendant has withheld from a 2012 report all data about the number of Hemisphere requests made each year per Regional Center, per HIDTA, and per agency. *See* Ex. 6 at 62-72. Yet a publicly available Hemisphere report states very similar statistics. *See, e.g.,* Ex. 1 at 14-18. Again, defendant does not explain how criminals have used—or could use—such statistical information to circumvent the law.

In defendant's Exemption 7(E) cases, unlike here, it was reasonably clear how criminals might abuse the disputed information, which was not publicly known. The FBI's methods of "forensic examination of a computer" might disclose "vulnerabilities," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), allowing criminals to better hide their data. The CBP's "computer function codes" might have allowed intruders "to improperly access" a CBP data system. *Concepcion v. CBP*, 907 F. Supp. 2d 133, 142 (D.D.C. 2012). The Coast Guard's methods of "detecting" and "boarding" ships, *Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 257 (D.D.C. 2009), could be used by smugglers to hide contraband from a patrol boat or a boarding party. The ATF's specific uses of "search and arrest warrant techniques," *Skinner v. DOJ*, 744 F. Supp. 2d 185, 214 (D.D.C. 2010), could allow criminals to evade arrest or disrupt searches. The FBI's methods for developing psychological profiles during critical incidents could be used by criminals to "develop countermeasures," *Miller v. DOJ*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008), and thus deprive the police of insights into who they are dealing with. The FBI's protocols for "investigating obscenity violations" (including "who would be interviewed, what could be asked, and what records or other

---

[25] *See* https://www.eff.org/cases/hemisphere.

documents would be reviewed") might enable criminals "to tamper with those sources of information." *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993). The CBP's identification of "vulnerabilities" in "areas patrolled by fewer agents" might be used by "smugglers" to enter unlawfully. *Gilman v. DHS*, 32 F. Supp. 3d 1, 20 (D.D.C. 2014).

But here, on the other hand, criminals already know that police across the nation have access to Hemisphere and can use it to trace their replacement phones and social networks. Defendant has made no showing that disclosure of the disputed information would arm criminals with information to evade law enforcement—beyond what they already have.

Finally, defendant emphasizes *Blackwell*'s denial of FOIA access to information about how the FBI uses the ChoicePoint database. *See* Mot. at 21, citing *Blackwell*, 646 F.3d at 42. But ChoicePoint and Hemisphere are very different kinds of databases. ChoicePoint is an amalgamation of many kinds of publicly available records about millions of individuals, including social security numbers, addresses, properties, licenses, weapon permits, marriage and death certificates, vehicle registrations, eviction notices, credit card records, employment histories, and the identity of personal associates and relatives.[26] The myriad different forms of data aggregated in the ChoicePoint database convinced the court that "the manner in which the data is searched, organized and reported to the FBI" might have been used by criminals "to employ countermeasures to avoid detection." 646 F.3d at 42. Moreover, the disputed information might have identified kinds of data not previously known to be included within ChoicePoint. Hemisphere, on the other hand, captures only one kind of information: call detail records. And criminals already know that police can and do use Hemisphere to scrutinize every call that passes through an AT&T switch.

## IV.    Defendant Has Failed to Segregate and Release Non-Exempt Information

Even when a responsive record contains exempt information, the agency must disclose "any

---

[26] *See, e.g.,* http://www.govexec.com/defense/2005/11/fbi-pentagon-pay-for-access-to-trove-of-public-records/20630/.

reasonably segregable portion" of the record. 5 U.S.C. § 552(b). An agency "cannot justify withholding an entire document simply by showing that it contains some exempt material." *EFF v. CIA*, 2013 WL 5443048, *24 (N.D. Cal. 2013); *Willamette Indus. v. United States*, 689 F.2d 865, 867 (9th Cir. 1982).

The agency bears the burden of proving it has met this duty. *Pacific Fisheries v. United States*, 539 F.3d 1143, 1148-49 (9th Cir. 2008). It cannot do so with "boilerplate, conclusory statements" that "provide no facts from which the Court can evaluate that assertion." *Bay Area Lawyers Alliance v. State Dept.*, 818 F. Supp. 1291, 1299-1300 (N.D. Cal. 1992); *see also Stolt-Nielsen Ltd.*, 534 F.3d at 734 (holding that a "conclusory" declaration that the agency paralegal had "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act" was "not sufficient support for a court to conclude that the self-serving conclusion is the correct one"). Courts must make "specific factual findings" on a "document-by-document basis" regarding whether the government has met its burden. *NRDC*, 388 F. Supp. 2d at 1096, citing *Wiener*, 943 F.2d at 988. The duty to segregate "applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984).

Here, defendant withholds 119 pages in full. *See* Myrick Decl. at 5-6 (defendant initially withheld 132 pages and later disclosed parts of 13 of these pages). Twelve disputed Hemisphere records are fully redacted. *See Vaughn* Index at 1, 4, 6-8, 21, 25, 27, 29-30, 32, 34. An additional seven disputed Hemisphere records, consisting of 164 pages, are almost completely redacted. *Id.* at 10, 12, 14, 22-23, 26, 28. For example, in a 142-page slide tutorial, 42 pages are withheld in full while another 81 pages are almost completely redacted; the only unredacted text on those pages is a slide title or the word "Hemisphere." *Id.* at 26. No doubt there are substantial opportunities for segregation and release of non-exempt information. For example, as discussed above, defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

could have segregated and released the numbers of Hemisphere requests to the Los Angeles Center in each of six months. *Compare* Ex. 9 at 287; *with* Ex. 10 at 2. The brief boilerplate description of segregation in defendant's declaration, Myrick Decl. at 18, is insufficient to show otherwise.

## V.     If the Court Has Any Doubts About Granting Summary Judgment for Plaintiff, the Court Should Review the Disputed Records *In Camera*

As set forth above, defendant has failed to meet its burden of proving that any of its asserted FOIA exemptions apply to any of the disputed records. Thus, plaintiff is entitled to summary judgment and release of the disputed records. If there is any doubt, EFF respectfully urges this Court to review the disputed records *in camera*.

FOIA empowers the Court, in conducting its *de novo* review, to examine the contents of the disputed records *in camera*. 5 U.S.C. § 552(a)(4)(B). Such *in camera* review can "compensate" for the "imbalance of knowledge" between the agency, which has the records, and the requester, which does not. *Islamic Shura Council v. FBI*, 635 F.3d 1160, 1165 (9th Cir. 2011). An *in camera* inspection "does not depend on a finding or even tentative finding of bad faith." *Spirko v. USPS*, 147 F.3d 992, 996 (D.C. Cir. 1998). Courts have undertaken such review in other cases involving records of dragnet surveillance. *See, e.g., EFF*, 2014 WL 3945646, *1-2.

Here, if this Court is not persuaded by the summary judgment briefs and record that plaintiff is entitled to summary judgment, then three factors support *in camera* review. First, *in camera* review is appropriate where agency declarations do not provide sufficient detail about the disputed records to determine the applicability of asserted exemptions. *Islamic Shura Council*, 635 F.3d at 1166. In this case, as discussed above, defendant's conclusory declaration, *Vaughn* Index, and brief do not provide sufficient detail.

Second, *in camera* review is appropriate where there is "a strong public interest in disclosure," and "citizens request information to ascertain whether a particular agency is properly serving its public function." *Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980), *disavowed on*

*other grounds by Church of Scientology v. Smith*, 721 F.2d 828, 829-30 (D.C. Cir. 1983). *See also Jones v. FBI*, 41 F.3d 238, 243 (6th Cir. 1994) (holding that *in camera* review is proper "where the effect of disclosure or exemption clearly extends to the public at large, such as a request which may surface evidence of corruption in an important government function"). Here, there is ongoing and significant national discussion of Hemisphere.[27]

Third, *in camera* review is appropriate where disclosure would "publicly embarrass the agency," or a "cover up" is presented. *Jones*, 41 F.3d at 243. Here, the DEA and other police agencies purposefully hid Hemisphere from judicial and public scrutiny. Specifically, they tried to "keep the program under the radar" by using it only as a "pointer system" to identify suspects' phones, associates, and locations; then using "parallel subpoenaing" to obtain pertinent phone records through traditional means; and "walling off" the copies of those records previously obtained through Hemisphere. *See supra* at 4. So a "cover up" has already occurred. *In camera* review would ensure this "cover up" does not continue.

In sum, if this Court has any doubts about granting summary judgment for plaintiff, then an efficient and fair way to resolve this FOIA dispute would be for this Court to review the disputed records *in camera*. Defendant's description of the disputed records is not adequate. There is substantial public interest in the Hemisphere program. And the government hid the program.

---

[27] *See, e.g.,* Mike Levine, *DEA Program Puts Phone Company Inside Government Offices*, ABC News (9/1/13), *available at* abcnews.go.com/blogs/headlines/2013/09/dea-program-puts-phone-company-inside-government-offices/; Evan Perez, *DEA Program Linked to Vast AT&T Database*, CNN (9/2/13), *available at* security.blogs.cnn.com/2013/09/02/dea-program-linked-to-vast-att-database-documents-show/; Kevin Collier, *AT&T Has a Record of Everywhere You've Carried Your Phone,* The Daily Dot (9/2/13), *available at* dailydot.com/politics/att-hemisphere-nsa-dea-location-metadata/; Associated Press, *Drug Agents Plumb Vast Database of Call Records*, S.F. Examiner (9/3/13), *available at* sfexaminer.com/drug-agents-plumb-vast-database-of-call-records/. *See also, e.g.,* EFF, *Hemisphere: Law Enforcement's Secret Call Records Deal with AT&T, available at* eff.org/cases/hemisphere; EPIC, *EPIC v. DEA – Hemisphere*, *at* epic.org/foia/dea/hemisphere/; ACLU, *Creepy Government Surveillance Shouldn't Be Kept Secret*, at aclu.org/blog/creepy-government-surveillance-shouldnt-be-kept-secret.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the above reasons, plaintiff respectfully requests that this Court grant plaintiff's motion for summary judgment, deny defendant's motion for summary judgment, and order disclosure of the information discussed above.

DATED: March 17, 2016                    Respectfully submitted:

                                           */s/ Jennifer Lynch*
                                           Jennifer Lynch
                                           ELECTRONIC FRONTIER FOUNDATION
                                           815 Eddy Street
                                           San Francisco, CA 94109

                                           Attorney for Plaintiff
                                           ELECTRONIC FRONTIER FOUNDATION