1

2

3                        UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

6   ELECTRONIC FRONTIER                    Case No.  15-cv-03186-MEJ
    FOUNDATION,

7                    Plaintiff,            **ORDER RE: CROSS MOTIONS FOR
                                           SUMMARY JUDGMENT**

8         v.                               Re: Dkt. Nos. 19, 23

9   DEPARTMENT OF JUSTICE,

10                   Defendant.

11

12                              **INTRODUCTION**

13         Plaintiff Electronic Frontier Foundation ("EFF") filed this lawsuit under the Freedom of

14  Information Act ("FOIA"), 5 U.S.C. § 552, to compel the release of records from the Drug

15  Enforcement Administration ("DEA"), a component of Defendant United States Department of

16  Justice ("DOJ") (collectively "the Government").  Compl. ¶ 1, Dkt. No. 1.  Pending before the

17  Court are the parties' cross motions for summary judgment.  Gov't Mot., Dkt. No. 19; EFF Mot.,

18  Dkt. No. 23.  Having considered the parties' positions, the relevant legal authority, and the record

19  in this case, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion

20  and **GRANTS IN PART** and **DENIES IN PART** EFF's Motion as set forth below.

21                              **BACKGROUND**

22         On February 5, 2014, EFF submitted a FOIA request to the DEA for records pertaining to

23  the "Hemisphere" program.  Compl. ¶ 1; Declaration of Katherine L. Myrick ("Myrick Decl."),

24  Ex. A ("FOIA Request"), Dkt. No. 21.  EFF alleges Hemisphere is a partnership between

25  telecommunications provider AT&T and law enforcement officials, including the DEA, that

26  allows law enforcement to access detailed phone records and conduct complicated analysis and

27  data mining of those records.  *Id.* (both).  The *New York Times* first reported on Hemisphere's

28  existence on September 1, 2013.  EFF Mot. at 1 (citing Scott Shane & Colin Moynihan, *Drug*

*Agents Use Vast Phone Trove, Eclipsing N.S.A.'s*, N.Y. Times (Sept. 1, 2013, http://www.nytimes.com/2013/09/02/us/drug-agents-use-vast-phone-trove-eclipsing-nsas.html)). The program involves the placement of AT&T employees within law enforcement facilities to assist law enforcement access trillions of Americans' electronic call detail records (CDRs) dating back to 1987.  *Id.* at 2.  CDRs contain a phone user's dialing, routing, and location information. *Id.*; *see also* Declaration of Jennifer Lynch ("Lynch Decl."), Ex. 1 (Hemisphere Summary), Dkt. No. 23-1.

  EFF's FOIA request specifically sought the following about Hemisphere:

 1. Any and all DEA or DOJ memoranda, policies, procedures, forms, training and practice manuals concerning the "Hemisphere" program;

 2. The case name, docket number, and court of all criminal prosecutions, current or past, in which officers and agents used the "Hemisphere" program to obtain records or data;

 3. Any communications or discussions with AT&T or any other telecommunications providers concerning technical or legal difficulties the DEA or DOJ has encountered in obtaining records and data through "Hemisphere;"

 4. Any communications or discussions between DEA or DOJ and other law enforcement agencies, including, but not limited to Immigrations and Customs Enforcement ("ICE"), the Federal Bureau of Investigation ("FBI"), state and local law enforcement agencies, and fusion centers related to coordinating or managing the "Hemisphere" program or any data obtained through "Hemisphere;"

 5. Any DEA or DOJ contracts or compensation agreements with AT&T or any other telecommunications provider concerning the "Hemisphere" program;

 6. Any DEA or DOJ contracts or compensation agreements with fusion centers or local law enforcement agencies to manage or coordinate the "Hemisphere" program and any data obtained through "Hemisphere"; and

 7. Any briefings, discussion, or other exchanges between DEA or DOJ officials and members of the Senate or House of Representatives concerning the existence and operation of "Hemisphere."

FOIA Request at 2.[1]

---

[1] EFF requested expedited processing under 5 U.S.C. § 522(a)(6)(E)(v)(II) and 28 C.F.R. §§ 16.5(d)(1)(ii) and (iv), citing a "compelling need," an "urgency to inform the public about an

United States District Court
Northern District of California

1    Between March 2014 and June 2014, the parties exchanged communications during which

2    EFF reformulated and narrowed its request in response to the DEA's requirements.  *See* Myrick

3    Decl., Ex. D (DEA letter to EFF).  Among other things, EFF limited the search to (1) the DEA

4    Headquarters in Springfield, Virginia, and the Los Angeles, San Diego, and San Francisco field

5    divisions; (2) records between 2008 and the present; (3) with regard to Item 2, criminal records

6    contained within the DEA's Investigative Reporting and Filing System; and (4) with regard to

7    Item 6, communications, discussions, contracts or compensation agreements between the DEA

8    offices identified above and six specific fusions centers.  Myrick Decl., Ex. E (EFF's

9    Reformulated FOIA Request).  In responses dated May 13, 2014 (*id.* ¶ 14, Ex. F (DEA's first

10   response)), and April 7, 2015 the DEA informed EFF it would release 176 pages and withhold 132

11   pages based on FOIA Exemptions 5, 6, 7(A), 7(C), 7(D), 7(E), and (7)(F).  *Id.* ¶ 15, Ex. M (DEA's

12   Apr. 7 response).  EFF filed an administrative appeal with the DOJ's Office of Information Policy

13   ("OIP") on April 28, 2015.  Second Myrick Decl., Ex. A, Dkt. No. 26.  OIP affirmed the DEA's

14   withholding on July 10, 2015.  *Id.*, Ex. B.

15   On July 9, 2015, EFF filed the present lawsuit.  *See* Compl.  The DEA subsequently

16   prepared a draft *Vaughn* Index as part of its meet and confer with EFF.  Myrick Decl. ¶ 16.  On

17   December 24, 2015, the DEA released to EFF portions of 13 pages it previously withheld in full.

18   *Id.* ¶ 17.  Following the meet and confer process, the parties no longer dispute employee

19   identifying information withheld under Exemptions 6, 7(C), and 7(F).  EFF Mot. at 1 n.1; *see also*

20   Scharf Decl., Ex. B (EFF's e-mail response to the Government identifying the disputed

21   documents), Dkt. No. 20; Gov't Mot. at 12.

22   The Government then filed its Motion for Summary Judgment, asserting the DEA

23   conducted an adequate search and properly withheld responsive documents protected by the FOIA

24

25   actual or alleged federal government activity," and "widespread and exceptional media interest in
     which there exist possible questions about the government's integrity which affect public

26   confidence."  FOIA Request at 2-5.  EFF also requested that it not be charged search or review
     fees as a representative of the news media pursuant to FOIA and 28 C.F.R. § 16.11(b)(6), and

27   stated that it was entitled to a waiver of duplication fees because disclosure of the requested
     information is in the public interest under 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. §

28   16.11(k)(l)(i), (ii).  *Id.* at 5-7.  The DEA denied EFF's request for expedited processing, but
     granted its request for a fee waiver or reduction of fees.  Myrick Decl. ¶¶ 9-11.

1    Exemptions.  Gov't Mot. at 2; *see also* Myrick Decl., Ex. O ("*Vaughn* Index").  EFF filed a cross-

2    Motion for Summary Judgment, disagreeing with DEA's claimed exemptions and seeking

3    information from seven documents withheld under Exemption 5, plus 27 documents withheld or

4    redacted under Exemption 7.  EFF Mot. at 6, 12; Gov't Reply at 11, Dkt. No. 25.

5         Since the parties filed their Motions, the Court ordered two rounds of supplemental

6    briefing, and the parties have timely responded.  The Government also filed a Statement of Recent

7    Decision (Dkt. No. 39), attaching an Opinion by Judge Emmet G. Sullivan in *Electronic Privacy*

8    *Information Center v. United States Drug Enforcement Agency* ("*EPIC*"), 2016 WL 3557007

9    (D.D.C. June 24, 2016).  *EPIC* considers some of the same documents and exemptions at issue in

10   this action.  However, as of the date of this Order, the briefing in that case is still ongoing, and

11   Judge Sullivan appears to be conducting further review of the evidence in that matter.  For clarity,

12   this Court ordered the Government to indicate which documents were at issue in both cases and

13   which Exemptions it asserted in *EPIC* for each of those documents.  Order, Dkt. No. 40.  Based on

14   the Government's response, it appears that in some instances the Government applied different

15   Exemptions to the same documents in this case and the *EPIC* case.  *See* Third Myrick Decl., Ex. B

16   (chart), Dkt. No. 43.  EFF argues these inconsistencies demonstrate the need to "independently

17   check" the Government's withholding decisions.  EFF Fifth Suppl. Resp. at 3, Dkt. No. 45.

18                                          **LEGAL STANDARD**

19        FOIA's "core purpose" is to inform citizens about "what their government is up to."

20   *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012), *overruled on other*

21   *grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.* ("*Animal Legal*"), 836 F.3d

22   987 (9th Cir. 2010) (internal quotation marks omitted).  This purpose is accomplished by

23   "permit[ting] access to official information long shielded unnecessarily from public view and

24   attempt[ing] to create a judicially enforceable public right to secure such information from

25   possibly unwilling official hands."  *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded on other*

26   *grounds by statute as recognized in Islamic Shura Council of S. Cal. v. F.B.I.*, 635 F.3d 1160,

27   1166 (9th Cir. 2011).  Such access "ensure[s] an informed citizenry, vital to the functioning of a

28   democratic society, needed to check against corruption and to hold the governors accountable to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted). Congress enacted FOIA to "clos[e] the loopholes which allow agencies to deny legitimate information to the public." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (internal quotation marks and edits omitted).

At the same time, FOIA contemplates that some information can legitimately be kept from the public through the invocation of nine "Exemptions" to disclosure. *See* 5 U.S.C. § 552(b)(1)-(9). An agency may withhold only information to which the asserted Exemption applies and must provide all "reasonably segregable" portions of that record to the requester. 5 U.S.C. § 552(b). "These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n* ("*Klamath*"), 532 U.S. 1, 7-8 (2001) (internal quotation marks omitted). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (agency seeking to withhold information has burden of proving the information falls under the claimed Exemption).

The usual question raised in FOIA litigation is, as here, whether the information withheld by the government properly falls within the scope of the asserted exemptions. "Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal*, 836 F.3d at 989 (citation omitted). Trial courts review summary judgment motions in FOIA actions under a *de novo* standard, in line with Federal Rule of Civil Procedure 56(c).[2] *Id.*; 5 U.S.C. § 552(a)(4)(B) (a reviewing court "shall determine the

---

[2] Additionally, not all FOIA cases may be resolved on summary judgment. "[S]ome FOIA cases require resolution of disputed facts." *Animal Legal*, 836 F.3d at 989 (citing *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1110 (9th Cir. 1994) (requiring a factual determination of substantial competitive harm)). If a factual determination needs to be made, summary judgment is not appropriate. *Id.* at 990. The Ninth Circuit also held that

> [c]onsistent with our usual procedure, if there are genuine issues of
> material fact in a FOIA case, the district court should proceed to a
> bench trial or adversary hearing. Resolution of factual disputes
> should be through the usual crucible of bench trial or hearing, with

5

United States District Court
Northern District of California

matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . , and the burden is on the agency to sustain its action.").

The *de novo* standard requires courts to determine whether there are any genuine issues of material fact. *Animal Legal*, 836 F.3d at 989. To carry their burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto*, 686 F.3d at 688 (edits in original) (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004)). "These submissions—commonly referred to as a *Vaughn* index—must be from 'affiants [who] are knowledgeable about the information sought" and "detailed enough to allow [a] court to make an independent assessment of the government's claim [of exemption].'" *Id*. (edits in *Yonemoto*) (quoting *Lion Raisins*, 354 F.3d at 1079; 5 U.S.C. § 552(a)(4)(B)). While the *Vaughn* index need not "disclose facts that would undermine the very purpose of its withholding, . . . it should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Id.* (internal quotation marks omitted). Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)).

However, while "the [agency's] reasons are entitled to deference, the [agency's] declarations must still describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show

---

evidence subject to scrutiny and witnesses subject to cross-examination. The district court must issue findings of fact and conclusions of law. Fed. R. Civ. P. 52(a)(1). Our review remains the same as in all civil cases: we review the findings of fact for clear error and the conclusions of law de novo. *See OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011).

*Id.*

1    that the justifications are not controverted by contrary evidence in the record or by evidence of

2    [the agency's] bad faith.  The [agency] must do more than show simply that it has acted in good

3    faith." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (internal quotation marks and

4    citations omitted); *see also Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) ("[T]he government

5    'may not rely upon conclusory and generalized allegations of exemptions.'" (quoting *Church of

6    Scientology v. Dep't of the Army* ("*Church of Scientology I*"), 611 F.2d 738, 742 (9th Cir. 1980))).

7    Indeed, *de novo* review has been "deemed essential to prevent courts reviewing agency action

8    from issuing a meaningless judicial imprimatur on agency discretion." *Animal Legal*, 836 F.3d at

9    990 (quoting *Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999)).  Moreover, "[a] basic policy of

10   FOIA is to ensure that Congress and not administrative agencies determines what information is

11   confidential." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987).  As such,

12   courts do not defer to a federal agency's determination that the requested information falls under a

13   particular FOIA exemption.  *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007).

**DISCUSSION**

14

15          As an initial matter, EFF has not challenged the adequacy of the DEA's search.  *See* Gov't

16   Mot. at 3 (noting EFF never challenged the reasonableness of the search during the meet and

17   confer process); Declaration of James A. Scharf ("Scharf Decl."), Ex. B (EFF's e-mail response to

18   the DEA, only challenging FOIA Exemptions), Dkt. No. 20.  The Court is satisfied the DEA's

19   search was sufficient.[3]  Accordingly, the only issue remaining is whether the Government properly

20   withheld documents under Exemptions 5, 7(A), 7(D), and 7(E).  The Court discusses each asserted

21   Exemption below.

22   **A.       Exemption 5**

23          Exemption 5 permits withholding of "inter-agency or intra-agency memorandums or letters

24

25   ───────────────

     [3] In responding to EFF's reformulated FOIA request, the DEA searched six offices likely to have
26   responsive records within the DEA Headquarters, as well as the Los Angeles, San Diego, and San
     Francisco divisions.  Myrick Decl. ¶¶ 19-31.  It also searched the Narcotics and Dangerous Drugs
27   Information System, and the index to the Investigative Reporting and Filing System.  *Id.* ¶ 32.  It
     returned responsive documents to the FOIA Unit, except those documents that it withheld under
28   specific FOIA exemptions.  *Id.* ¶¶ 19-34; *see Vaughn* Index.

United States District Court
Northern District of California

which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption extends only to documents that are "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (footnote omitted). This includes documents covered by the attorney-client privilege ("ACP"), the attorney work-product rule ("WP"), and the deliberative process privilege ("DPP"). *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). In keeping with FOIA's goal of disclosure, Exemption 5 is narrowly construed. *Klamath*, 532 U.S. at 8.

EFF's chart summarizes the documents withheld under Exemption 5:

| Index # | Page # | Document Description[4] | ACP | WP | DPP |
|---------|--------|-------------------------|-----|----|----|
| 1 | 1-12 | E-mails with attachments among federal staff including a Deputy Assistant Attorney General addressing Hemisphere legal issues | x | x | x |
| 4 | 16-27 | Draft memorandum by the DEA's Office of Chief Counsel about Hemisphere legal issues. | x | x | x |
| 6 | 31-34 | Record about how to use Hemisphere capabilities | | | x |
| 7 | 35-36 | Record about how to use Hemisphere | | | x |
| 25 | 110 | E-mails in May 2007 about legal issues about Hemisphere and subpoenas | | x | |
| 27 | 253-54 | E-mails within the DEA including attorneys in November 2007 about Hemisphere Subpoenas | x | x | |
| 32 | 267-68 | E-mails in June 2008 about a draft Hemisphere policy | | | x |

EFF Mot. at 7; *but see* Myrick Decl. ¶¶ 42-43 (initially indicating Documents 28 and 33 are disputed, not Documents 27 and 32); *compare* Joint Resp. re: Order for Clarification ¶ 2, Dkt. No. 32 (indicating Document 27 (pages 253-54) is in dispute) & *see* Gov't Reply (indicating Documents 28 and 33 are disputed); *see also Vaughn* Index at 86 (Document 28 does not include Exemption 5 assertions) and 104 (Document 33 does not include Exemption 5 assertions).[5]

---

[4] These descriptions correspond with the Government's descriptions in its draft *Vaughn* Index.

[5] This sort of inattention and incorrect citations has caused the Court to waste considerable time and resources checking and rechecking the documents at issue in this action.

EFF first argues the DEA has not established that Documents 4, 6, 7, 25, and 32 are "inter-agency" or "intra-agency" communications that qualify for protection under Exemption 5's "inter-agency or intra-agency memorandums or letters" protections.  EFF Mot. at 7-8; *see* 5 U.S.C. § 552(b)(5).  EFF does not challenge Documents 1 and 27 on this ground, where the Government alleged the authors and recipients of the communications are attorneys and employees within the federal Government or the DEA.  EFF Mot. at 8; *see* Myrick Decl. ¶¶ 37, 42; *Vaughn* Index at 1, No. 1 (alleging the communication was "among federal government employees"); *id.* at 83, No. 27 (alleging the communication was "internal-DEA").  But EFF contends the DEA's silence as to Documents 4, 6, 7, 25, and 32 "speaks volumes"—particularly in contrast with the affirmative inter- and intra-agency allegations in support of Documents 1 and 27.  EFF Mot. at 8.  EFF asserts the DEA has "withheld five records under Exemption 5 without alleging, let alone proving, they were not shared outside the executive branch[,]" and Exemption 5 does not extend to communications outside the federal government.  *Id.* at 7 (citing *Ctr. for Int'l Envtl. Law v. Trade Representative*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002)).  In support of its challenge, EFF cites various news articles and previously disclosed documents indicating that Hemisphere involves many parties outside the federal government, including state and local police and private corporations, and that communications related to Hemisphere have been shared outside the federal government.  *Id.* at 8 (citations omitted).  In response, the Government argues these documents fit under the "consultant corollary," which holds that documents prepared for a government agency by an outside consultant qualify as an "intra-agency" communication where the consultant has no other interest other than the agency.  Gov't Reply at 4 (citing *Klamath*, 532 U.S. at 2).

Under 5 U.S.C. §§ 551(1) and 552(f), "'agency' means each authority of the Government of the United States" and "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  Documents prepared for a Government agency by an outside consultant may qualify as intra-agency communication where "the consultant does not represent an interest of its own, or the interest of any other client," while advising the agency.  *Klamath*, 532 U.S. at 11.  These

1  documents "play[] essentially the same part in an agency's process of deliberation as documents

2  prepared by agency personnel[.]"  *Id.*  Whether a document is an inter- or intra-agency

3  communication is a fact-specific inquiry.  *Elect. Frontier Found. v. Office of the Dir. of Nat'l*

4  *Intelligence* ("*EFF I*"), 639 F.3d 876, 890 (9th Cir. 2010).

5        Having reviewed the Government's supporting evidence, the Court finds it has raised a

6  genuine question of fact as to whether Document 4 qualifies as an "inter-agency" communication.

7  The Government indicates Document 4 is "a draft memorandum prepared by an attorney in the

8  DEA Office of Chief Counsel" and "contains a draft of confidential legal advice to DEA."  Myrick

9  Decl. ¶ 38.  Thus, Document 4 appears to be a communication shared by employees within the

10  federal government, specifically the DEA.

11        Documents 6, 7, 25, and 32 are less clear.  The Government's supporting declaration and

12  *Vaughn* Index describe them as follows:

13       • "Document 6 . . . is undated and concerns Hemisphere, Hemisphere's capabilities,

14         and how to use Hemisphere."  Myrick Decl. ¶ 39.  The "author [is] not indicated."

15         *Id.*; *Vaughn* Index at 19, No. 6.

16       • "Document 7 . . . is undated and concerns how to use Hemisphere."  Myrick Decl. ¶

17         40.  "No author [is] indicated."  *Id.*; *Vaughn* Index at 24, No. 7.

18       • "Document 25 . . . is an e-mail dated May 2007, concerning legal issues related to

19         the use of Hemisphere and subpoenas" and "was initiated by a DEA attorney."

20         Myrick Decl. ¶ 41.  No recipient is identified.  *See id.*; *see also Vaughn* Index at 75,

21         No. 25.

22       • Document 32 "consists of e-mails dated June 2008, entitled 'DRAFT Operation

23         Hemisphere Policy.'"  Myrick Decl. ¶ 43.[6]  No author or recipient is identified.  *See*

24         *id.*

25        The Government tacitly acknowledges these documents may have been shared outside the

26  federal government but argues the consultant corollary still applies.  Gov't Reply at 4.  But the

27

28  _____

[6] As noted earlier, the Myrick Declaration identifies this Document as Document 33, not 32.  *See*
Myrick Decl. ¶ 43.

United States District Court
Northern District of California

1  Government has not provided any evidence in support of its consultant corollary theory. There is

2  no indication of who these alleged consultants were or how they are related to the materials

3  communicated. Indeed, except for Document 25, the Court cannot even determine who wrote or

4  received these documents. The Government's *Vaughn* Index and its supporting declarations fail to

5  provide information sufficient for the Court to assess the Government's consultant corollary

6  theory or to fully assess whether these documents might otherwise constitute "inter-agency" or

7  "intra-agency" communications. Without more, the Court cannot find that Documents 6, 7, 25,

8  and 32 are "inter-agency" or "intra-agency" communications subject to protect under Exemption

9  5. *See Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 172 (D.D.C. 2011)

10 (*Vaughn* submissions did not provide a sufficient basis for evaluating whether agency improperly

11 withheld documents under Exemption 5 because the plaintiff had provided evidence casting doubt

12 as to whether the Government shared with non-Executive Branch entities the responsive

13 documents it withheld from the plaintiff); *cf. EFF I*, 639 F.3d at 891 ("Nearly all of the

14 characterizations in the government-offered declarations comport with the descriptions in the

15 Vaughn indices of inter-branch or intra-branch communications."). Accordingly, the Court only

16 addresses whether Exemption 5 applies to Documents 1, 4, and 27, which the Government has

17 adequately supported as intra- or inter-agency documents; Documents 6, 7, 25, and 32 shall be

18 released.

19       1.    Attorney-Client Privilege

20       The parties dispute whether the DEA has provided sufficient information to prove

21 Documents 1, 4, and 27 are protected under the attorney-client privilege. EFF Mot. at 10-11;

22 Gov't Reply at 5-6. To invoke the privilege, the party seeking protection must establish the

23 following elements:

24              (1) when legal advice of any kind is sought (2) from a professional
                legal adviser in his or her capacity as such, (3) the communications
25              relating to that purpose, (4) made in confidence (5) by the client, (6)
                are, at the client's instance, permanently protected (7) from
26              disclosure by the client or by the legal adviser (8) unless the
                protection be waived.
27

28 *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002), *as amended on denial of reh'g*

United States District Court
Northern District of California

1   (Mar. 13, 2002) (citations omitted)).  "A communication from the attorney to the client that does

2   not contain legal advice may be protected if it 'directly or indirectly reveals communications of a

3   confidential nature by the client to the attorney.'"  *United States v. Christensen*, 801 F.3d 970,

4   1007 (9th Cir. 2015) (internal quotation marks and edits omitted); *see id.* ("[A] communication

5   from the attorney to a third party acting as his agent for the purpose of advising and defending his

6   clients also may be protected if it reveals confidential client communications." (internal quotation

7   marks omitted)).  "[A]n agency can be a 'client' and agency lawyers can function as 'attorneys'

8   within the relationship contemplated by the privilege."  *Coastal States Gas Corp. v. Dep't of*

9   *Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

10          The Government represents that information in Document 1 was confidentially

11   communicated between "federal government attorneys, including a Deputy Assistant Attorney

12   General at DOJ, to and among federal government employees[,]" Document 4 is a draft

13   memorandum communicated by an attorney in the DEA Office of Chief Counsel, and Document

14   27 was confidentially communicated via "internal-DEA e-mails" from "DEA attorneys to DEA."

15   Myrick Decl. ¶¶ 37-38, 42.  But the Government fails to show that these documents contain legal

16   advice or could reveal communications of a confidential nature.  The Government's declaration is

17   too conclusory.  *See Wiener v. FBI*, 943 F.2d 972, 978-79 (9th Cir. 1991) *cert. denied*, 505 U.S.

18   1212 (1992) (holding that unless the agency discloses as much information as possible without

19   thwarting the claimed Exemption's purpose, the adversarial process is unnecessarily

20   compromised, and affidavits consisting of "boilerplate" descriptions that fail "to tailor the

21   explanation to the specific document withheld" are insufficient)); *Coastal States*, 617 F.2d at 861

22   ("We repeat, once again, that conclusory assertions of privilege will not suffice to carry the

23   Government's burden of proof in defending FOIA cases.").  Specifically, the *Vaughn* Index

24   vaguely describes the e-mails in Document 1 as "addressing legal issues relating to Hemisphere"

25   which "deliver[] confidential legal advice (albeit preliminary advice) regarding features of the

26   Hemisphere program and does not itself establish final policy."  *Vaughn* Index at 1-2, No. 1.  The

27   Government's supporting declaration adds little to the *Vaughn* Index, merely regurgitating the

28   same description included in the *Vaughn* Index.  *See* Myrick Decl. ¶ 37.  Ultimately, the

United States District Court
Northern District of California

1    Government's declaration is too vague: it does not indicate even generally what sorts of legal

2    issues are presented in these e-mails, nor does not explain what "features" of the Hemisphere

3    program are at issue.  That the communications were between an attorney and agency employees

4    does not establish the documents are protected under the attorney client privilege; without more

5    about what "features" or "legal issues" are discussed or why they might be confidential in nature,

6    the Government has not raised enough facts to show that Document 1 may be protected by the

7    privilege.

8         As to Document 27, the *Vaughn* Index merely describes it as an e-mail "concerning

9    Hemisphere and subpoenas," without explaining the context in which subpoenas are discussed.

10   *Vaughn* Index at 84, No. 27.  For instance, the Government fails to explain whether it is referring

11   to particular subpoenas or whether the communications are simply administrative procedures or

12   instructions related to subpoenas in general.  Though the Government states that Document 27

13   contains e-mails "concerning Hemisphere and subpoenas to and/or from DEA attorneys," it

14   merely asserts that the e-mails are privileged "because of the confidential legal advice from DEA

15   attorneys to DEA contained therein."  Myrick Decl. ¶ 42.  The Government is essentially asking

16   the Court to presume that because it uses the word "subpoenas" and states that attorneys wrote or

17   received e-emails, these documents therefore reveal attorney-client communications of a

18   confidential nature.  Merely reiterating the elements of the privilege, however, does not satisfy the

19   Government's burden of establishing the privilege applies to this document.  *See Ctr. for*

20   *Biological Diversity v. Office of Mgmt. & Budget*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009)

21   (holding that defendants could not invoke the privilege by merely restating the scope of the

22   privilege and stating that the documents fell within that scope).

23        Next, the Government indicates Document 4 is a draft memorandum communicated by an

24   attorney in the DEA Office of Chief Counsel to the DEA, and contains legal advice by "analyzing

25   legal issues regarding the procedures used to obtain information through Hemisphere, intended to

26   assist senior DEA management, and containing comments added by the same attorney regarding

27   the same topics."  Myrick Decl. ¶ 38, *Vaughn* Index at 10-11, No. 4.  But the Government does not

28   articulate why this information is confidential or contains legal advice.  While it asserts that this

United States District Court
Northern District of California

document contains "confidential legal advice," again, this merely states the element without explaining the basis of that confidentiality. *Id.* The Government has not sufficiently demonstrated the confidential nature of Document 4. *See In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("[T]he claimant must demonstrate with reasonable certainty . . . that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." (internal citation omitted)); *Elec. Frontier Found. v. CIA* ("*EFF II*"), 2013 WL 5443048, at *16 (N.D. Cal. Sept. 30, 2013) ("[T]he agency must show that it supplied information to its lawyers with the expectation of secrecy and the information was not known by or disclosed to any third party."); *see also Am. Civil Liberties Union of N. Cal. v. Dep't of Justice*, 2015 WL 4241005, at *4 (N.D. Cal. July 13, 2015) ("While the Government states that this email contains the 'Criminal Division's legal advice on how law enforcement may use its own equipment to obtain location information for a particular wireless device,' . . . it is not clear how this document qualifies as legal advice . . . . Without more, the Court cannot find this document is protected under the attorney-client privilege of Exemption 5." (brackets and internal citation omitted)). Accordingly, the Court cannot find Document 4 is protected under the attorney-client privilege.

Finally, while the Government argues its generalized descriptions are sufficiently specific to show the documents contain "confidential legal advice," it relies only on cases that demonstrate how its support in this case is lacking. *See* Gov't Reply at 5 (citing *Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6, 15 (D.D.C. 2012) (upholding privilege where lawyer gave her opinion based on confidential communications regarding specific allegations against the agency and also involving settlement recommendations); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 802 F. Supp. 2d 185, 200, 204 (D.D.C. 2011) (upholding privilege where memoranda contained lawyer's legal analyses of proposed compensation structures and statutory requirements); *Ctr. For Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs.*, 577 F. Supp. 2d 221, 238 (D.D.C. 2008) (upholding privilege where the defendant "identified the source and recipient of the communications, which is critical to the Court's assessment of whether the communications are between an attorney and a client" and where communications were made for the purpose of seeking legal advice or rendering legal advice about the transfer of an agency

14

appeals process,  as well as draft regulations, draft hearings manuals, draft memoranda of understanding, drafting talking points, and draft reports to Congress); *Odland v. Fed. Energy Regulatory Comm'n*, 34 F. Supp. 3d 3, 19 (D.D.C. 2014) (upholding privilege where the Government disclosed the source and recipient of the communications and stated that the communications contained legal advice regarding underlying legal proceedings); *Touarsi v. U.S. Dep't of Justice*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (upholding privilege where declaration "makes clear" the confidential attorney-client communications involved a specific investigation and potential prosecution); *Judicial Watch, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 258 (D.D.C. 2014) (upholding privilege involving, among other things, an e-mail chain with a lawyer weighing approaches to take in possible forthcoming litigation)).  The Government argues the agency's task should not be "herculean" in providing supporting evidence for its claimed Exemptions.  Gov't Reply at 5 (quotation marks omitted).  But while the Government need not expose the very information contained in the withheld documents, here it does not provide the sufficient information for this Court to assess its assertion of privilege.  The Court is not asking the Government to make a herculean effort, merely something beyond regurgitation of the elements.  Without more, the Court cannot find Documents 1, 4, and 27 protected by the attorney-client privilege.

## 2.    Attorney Work-Product

The parties also dispute whether Documents 1, 4, and 27 are protected as attorney work-product.  EFF Mot. at 10; Gov't Reply at 6-8.  Under the attorney work-product doctrine, documents are protected from discovery if they are "prepared in anticipation of litigation or for trial" and prepared "by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A); *In re Grand Jury Subpoena Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004).

EFF argues the Government needs to "identify the litigation for which the documents were created" while the Government argues the privilege includes documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated.  EFF Mot. at 10 (quoting *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 237 (1st Cir. 1994); Gov't Reply at 6 (quoting *Am. Civil Liberties Union of N. Cal. v. Dep't of Justice*, 70 F. Supp. 3d 1018, 1030

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (N.D. Cal. 2014)); citing *Feshbach v. Sec. & Exch. Comm'n*, 5 F. Supp. 2d 774, 782 (N.D. Cal.

2    1997)).  As the Court has noted in prior orders, "the primary concern in determining whether a

3    document is protected as work product . . . [is] whether it was created in anticipation of litigation

4    in the way the work-product doctrine demands, i.e., by risking revealing mental impressions,

5    conclusions, opinions, or legal theories of an agency attorney, relevant to any specific, ongoing, or

6    prospective case or cases." *Am. Civil Liberties Union of N. Cal.*, 2015 WL 4241005, at *2 (citing

7    *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 143 (D.D.C. 2013)

8    ("While the memorandum may be, in a literal sense, 'in anticipation of litigation'—it simply does

9    not anticipate litigation in the way the work-product doctrine demands, as there is no indication

10   that the document includes the mental impressions, conclusions, opinions, or legal theories of ...

11   any [ ] agency attorney, relevant to any specific, ongoing or prospective case or cases.")).  Here, it

12   is not clear whether Documents 1, 4, and 27 were prepared in anticipation of *any* litigation—

13   foreseeable or not.

14          Superficially, the Government appears to indicate these documents relate to anticipated

15   litigation.  For instance, it states Document 1 was "prepared by DOJ attorneys in anticipation of

16   litigation relating to features of the Hemisphere program and the use of Hemisphere in law

17   enforcement."  Myrick Decl. ¶ 37.  Similarly, the Government states Documents 4 and 27 were

18   "prepared by a DEA attorney in anticipation of litigation relating to the use of Hemisphere in law

19   enforcement."  *Id.* ¶ 38.  But the Government makes no further reference to any current or

20   foreseeable litigation in either its supporting declarations or *Vaughn* Index or provide other

21   context that would allow the Court make a de novo review of the Government's work product

22   assertions.  Again, the Government cannot satisfy its burden of proof by relying on a mere

23   recitation of the elements.  *Cf. Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127

24   (D.C. Cir. 1987) (upholding privilege where the withheld document "advise[d] the agency of the

25   types of legal challenges likely to be mounted against a proposed program, potential defenses

26   available to the agency, and the likely outcome"); *Church of Scientology Int'l v. IRS*, 845 F. Supp.

27   714, 724 (C.D. Cal. 1993) (upholding privilege where the Government's declaration and *Vaughn*

28   Index specifically indicated the documents were "generated in preparation for litigation between

1   Plaintiff and the IRS in four specified matters").  Nor does the Government meet its burden merely

2   by referring to law enforcement efforts.  *See Senate of Puerto Rico on Behalf of Judiciary Comm.*

3   *v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) ("[I]nternal memoranda concerning

4   the status of a criminal investigation, prepared by DOJ attorneys in the course of their law

5   enforcement duties, are surely the kind of documents commonly sheltered by the work product

6   doctrine" but calling the government's affidavit a "bare" assertion where it merely stated that the

7   documents "were prepared by Civil Rights Division attorneys in anticipation of litigation" and

8   provided no other information).  As such, the Court cannot find Documents 1, 4, and 27

9   necessarily protected as work-product.

10       The Court acknowledges the *EPIC* court reached a different conclusion as to Document 1.

11  It appears that the *EPIC* plaintiff essentially waived argument on this issue by failing to contest

12  the application of the work-product doctrine to the email message in its first summary judgment

13  brief.  *EPIC*, 2016 WL 3557007, at *8.  Although the *EPIC* court considered essentially the same

14  supporting declarations as offered here, it found adequate grounds to find the document

15  constituted work product.  *Id.* at *9 (finding "no reason to doubt the veracity of Ms. Myrick's

16  declaration" and noting "the nature of the Hemisphere program, which clearly implicates

17  controversial law-enforcement techniques and privacy rights as evidenced by this lawsuit, satisfies

18  the Court that it is objectively reasonable for the government agencies involved to hold a

19  subjective belief that litigation was and is a real possibility.").  Having carefully weighed the

20  analysis in *EPIC* and the Government's showing here, the Court ultimately cannot find the

21  Government adequately supports the application of this privilege.  The Government merely recites

22  the elements necessary to establish the privilege, but it does not explain *why* they are met, such as

23  explaining why these particular documents relate to some anticipated litigation.  *See Senate of*

24  *Puerto Rico*, 823 F.2d at 586-87 ("While it may be true that the prospect of future litigation

25  touches virtually any object of a DOJ attorney's attention, if the agency were allowed to withhold

26  any document prepared by any person in the Government with a law degree simply because

27  litigation might someday occur, the policies of the FOIA would be largely defeated." (internal

28  quotation marks omitted)).  Accordingly, given the disparity between this Court's and the *EPIC*

United States District Court
Northern District of California

17

1    court's findings, the Court orders the Government to produce Document 1 for *in camera* review.

2             3.        Deliberative Process Privilege

3             The Government also asserts Documents 1, 4, and 32 are protected by the deliberative

4    process privilege.  *See* Gov't Mot. at 9-11.  The purpose of the privilege is "to allow agencies

5    freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of

6    public scrutiny."  *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th

7    Cir. 1992), *as amended on denial of reh'g* (Sept. 17, 1992).  Documents must be both

8    predecisional and deliberative to be protected under this privilege.  *Id.*  A document is

9    "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his

10   decision."  *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

11   Predecisional documents may include "recommendations, draft documents, proposals,

12   suggestions, and other subjective documents which reflect the personal opinions of the writer

13   rather than the policy of the agency."  *Assembly of State of Cal.*, 968 F.2d at 920 (quoting *Coastal*

14   *States*, 617 F.2d at 866).  A predecisional document is deliberative if "the disclosure of the

15   materials would expose an agency's decisionmaking process in such a way as to discourage candid

16   discussion within the agency and thereby undermine the agency's ability to perform its functions."

17   *Id.* (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir.

18   1987)).  Although facts are not protected by the deliberative process privilege, factual material

19   may be "so interwoven with the deliberative material that it is not severable."  *United States v.*

20   *Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000).

21            The Court ultimately finds the Government has not shown Documents 1, 4, and 32 are

22   protected under the deliberative process privilege.  Assuming the documents are predecisional, the

23   Government has failed to show how the disclosure of these documents would discourage candid

24   discussion within the DEA and undermine its ability to function.  *See Kowack v. U.S. Forest Serv.*,

25   766 F.3d 1130, 1135 (9th Cir. 2014) (rejecting assertion of deliberative process where the

26   Government did not "adequately show how the disclosure of any portion of the redacted

27   documents would expose the agency's decision-making process itself to public scrutiny." (quoting

28   *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988); edits and internal

United States District Court
Northern District of California

18

quotation marks omitted)).  For Documents 1 and 4, the Government offers no information other than the general assertion the documents were "intended to facilitate or assist" development of the DEA's final policy decisions regarding Hemispheres' "features" or "use" and its use in law enforcement.  Myrick Decl. ¶¶ 37-38.  Document 32's *Vaughn* Index description appears to appreciate the "deliberative" element, describing the purpose for this exemption, but it ultimately does not explain how the draft policy actually risks undermining that purpose.  *See Vaughn* Index at 100, No. 32.  In other words, the Government does not explain how the disclosure of these documents would affect its deliberative process by preventing or discouraging DEA employees or affiliates from giving their honest opinions, recommendations, or suggestions on how to develop policy decisions.  *Cf. Maricopa*, 108 F.3d at 1094-95 (finding documents deliberative as they consisted of "recommendations" and "suggestions" from an agency official to an independent consultant regarding charges against him, and adding that the official sought the consultant specifically for his "frankness" and "independence" in hopes of receiving an objective opinion).  Moreover, factual information that does not reveal the deliberative process is not subject to protection.  *See Kowack*, 766 F.3d at 1135.  As such, the Government has not shown these documents are covered by the deliberative process privilege.

Again, the Court has arrived at a different conclusion than the *EPIC* court as to Document 4.  *See EPIC*, 2016 WL 3557007, at *7.  As to this document, the *EPIC* court was seemingly satisfied that because "the memorandum includes comments by the attorney who prepared the document" it "reflect[s] the deliberative posture of the memorandum."  *Id.*  But this analysis does not assess whether the Government adequately supports that disclosure of this document could discourage candid discussion within the DEA and undermine its ability to perform its functions.  This Court must do so under Ninth Circuit law as discussed above.  The Court nonetheless will review Document 4 *in camera* given the disparity between these holdings.

4.    Summary of Exemption 5 Withholdings

The Government has not provided support for its decision to withhold Documents 1, 4, 6, 7, 25, 27, and 32 under Exemption 5.  However, the Government also withheld these documents under Exemption 7, which the Court discusses next.

**B.      Exemption 7**

Exemption 7 permits the Government to withhold "records or information compiled for law enforcement purposes" under certain enumerated requirements.  5 U.S.C. § 552(b)(7).  "The term 'law enforcement purpose' has been construed to require an examination of the agency itself to determine whether the agency may exercise a law enforcement function."  *Church of Scientology I*, 611 F.2d at 748.  If an agency has a clear law enforcement mandate, it "need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed."  *Id.*

It is undisputed that the documents at issue in this case were "compiled for law enforcement purposes" (EFF Mot. at 14); the dispute is whether the documents withheld by the Government satisfy the requirements of Exemptions 7(A), 7(C), and 7(D).  EFF's chart summarizes the Exemptions asserted for each withheld document:

| # | Page # | Document Description[7] | A | D | E |
|---|--------|-------------------------|---|---|---|
| 1 | 1-12 | Emails with attachments among federal staff including a Deputy Assistant Attorney General addressing Hemisphere legal issues | x | x | x |
| 2 | 13-14 | Emails within DEA from August 2008 through September 2012 about Hemisphere, subpoenas, and use of Hemisphere | x | x | x |
| 4 | 16-27 | Draft memorandum by the DEA's Office of Chief Counsel about Hemisphere legal issues | x | x | x |
| 5 | 28-30 | Slides about Hemisphere users, providers, and subpoenas | x | x | x |
| 6 | 31-34 | Record about how to use Hemisphere capabilities | x | x | x |
| 7 | 35-36 | Record about how to use Hemisphere | x | x | x |
| 8 | 37-39 | Document used in connection with Hemisphere | x | x | x |
| 9 | 40-41 | Hemisphere request form | x |  | x |
| 10 | 42-46 | Emails with attachments within DEA in October 2008 about Hemisphere use and subpoena | x | x | x |
| 11 | 47-48 | Hemisphere request form | x |  | x |

---

[7] These descriptions correspond with the Government's descriptions in its draft *Vaughn* Index. *See generally Vaughn* Index.

United States District Court
Northern District of California

| 12 | 49-50 | Slides about Hemisphere subpoenas | x | x | x |
|----|-------|-----------------------------------|---|---|---|
| 14 | 53-55 | A form court order for California Superior Court | x | x | x |
| 16 | 59-72 | Emails with attached agenda and charts within DEA in May 2012 about a Hemisphere meeting in June 2012 | | x | x |
| 17 | 73-77 | Emails of May 2012 with attachments about Hemisphere requests | x | x | x |
| 18 | 78-79 | Email in September 2013 about Hemisphere articles and scrutiny | | x | x |
| 19 | 80-95 | Email of December 2013 from L.A. HIDTA with attached data slides | x | x | x |
| 22 | 100-05 | Emails and attachments in October 2010 and September 2012 titled "request form and contract" | x | x | x |
| 23 | 106 | DEA subpoena form | x | x | x |
| 25 | 110 | Email in May 2007 about legal issues about Hemisphere and subpoenas | | x | x |
| 26 | 111-252 | Hemisphere tutorial | x | x | x |
| 27 | [2]53-54[8] | Emails within DEA including attorneys in November 2007 about Hemisphere Subpoenas | x | x | x |
| 28 | 255-59 | Email with attachments within DEA in January 2008 about Hemisphere subpoena protocols | x | x | x |
| 29 | 260-64 | Unsolicited Hemisphere proposal in August 2007 | x | x | x |
| 30 | 265 | Email within DEA in November 2007 about Hemisphere changes | | x | x |
| 31 | 266 | Email within DEA in January 2008 about Hemisphere subpoenas | | x | x |
| 32 | 267-68 | Emails in June 2008 about a draft Hemisphere | | x | x |
| 34 | 278-82 | Hemisphere Summary | x | x | x |

EFF Mot. at 12; *see also id.* at 5 (noting EFF "advised defendant it would no longer challenge defendant's withholding of any parts of . . . [Documents] 3, 13, 15, 20, 21, 24, 33, and 35 in the final *Vaughn* Index"); Myrick Decl. ¶¶ 49, 59 (noting (1) "DEA applied FOIA Exemption 7(A) to

---

[8] EFF's chart referred to Document 27 as identifying page numbers "353-54" but this appears to be a typographical error as the *Vaughn* Index refers to Document 27 as identifying page numbers "253-254." *Vaughn* Index at 83, No. 27.

United States District Court
Northern District of California

1   the following documents: 1-2, 4-14, 17, 19, 22-24, 26-29, and 33-35"; (2) "DEA applied FOIA

2   Exemption 7(D) to the following documents: 1-2, 4-8, 10, 12, 14, 16-19, and 21-25"; and (3)

3   "DEA applied FOIA Exemption 7(E) to the following documents: 1-14, 16-20, and 21-35.").  The

4   Government does not dispute the accuracy of this chart, though it notes that it did not withhold all

5   of these documents in full.  Gov't Reply at 11.

6       1.      Exemption 7(A)

7       Exemption 7(A) protects records compiled for a law enforcement purpose to the extent that

8   disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. §

9   552(b)(7)(A).  The agency bears the burden establishing "that it is a law enforcement agency, that

10   the withheld documents were investigatory records compiled for law enforcement purposes, and

11   that disclosure of those documents would interfere with pending enforcement proceedings."

12   *Lewis*, 823 F.2d at 379 (citations omitted).

13       At issue is whether the Government has established the disclosure of the documents above

14   would interfere with pending enforcement proceedings.[9]  EFF Mot. at 13-14; EFF Reply at 6-7;

15   Gov't Reply at 11-12.  EFF agrees Hemisphere is a law enforcement tool used by multiple law

16   enforcement agencies to support existing investigations, but it argues this fact "does not tend to

17   show, as required by Exemption 7(A), that disclosure 'could reasonably be expected to interfere

18   with enforcement proceedings.'"  EFF Mot. at 14 (quoting Gov't Mot. at 13).

19       The Government asserts it withheld these documents based on the advice of DEA

20   personnel familiar with the use of Hemisphere in law enforcement, current enforcement efforts,

21   and existing law enforcement strategies.  Myrick Decl. ¶ 48.  Rather than providing specific detail

22   about any specific pending or prospective law enforcement proceedings, the Government

23   generally argues "[t]he release of information about the scope of Hemisphere could reasonably be

24   expected to assist targets who could then use this information to evade law enforcement."  Gov't

25   _____

26   [9] The *EPIC* court did not consider whether any of these documents were protected under
    Exemption 7(A).  In supplemental briefing, EFF argues that "the federal government's decision

27   not to assert Exemption 7(A) over 107 pages in the *EPIC* case shows that Exemption 7(A) does
    not apply to those same 107 pages in this case."  EFF Sixth Suppl. Resp., Dkt. No. 47 (citing EFF

28   Fifth Suppl. Resp.).

United States District Court
Northern District of California

1    Mot. at 14-15.  In its Reply, it broadly asserts that "[r]evealing the particular scope, parameters,

2    uses, and functionality of a law enforcement technique would render that law enforcement

3    technique worthless which, in turn, could reasonably be expected to interfere with all of the

4    enforcement proceedings currently using Hemisphere."  Gov't Reply at 12.

5         The Ninth Circuit has consistently held that the Government "need only explain, publicly

6    and in detail, how releasing each of the withheld documents would interfere with the

7    government's ongoing criminal investigation." *Lion Raisins*, 354 F.3d at 1084 (citing *Lewis*, 823

8    F.2d at 379).  The Government's "submission must provide as much factual support for [its]

9    position as possible without jeopardizing [its] legitimate law enforcement interest in withholding

10   the documents, and it must be 'detailed enough for the district court to make a *de novo* assessment

11   of the government's claim of exemption.'"  *Id.* (quoting *Maricopa*, 108 F.3d at 1092).

12        But the *Vaughn* Index[10] and the Government's declarations fall short of providing

13   "detailed enough" information about these documents to show how their disclosure "could

14   reasonably be expected to interfere with law enforcement proceedings." *Shannahan*, 672 F.3d at

15   1145 (quoting *Kamman*, 56 F.3d at 48).  As EFF notes, the Government's broad argument that

16   anytime a law enforcement technique is revealed risks interference with law enforcement

17   proceedings seems to implicate Exemption 7(E), concerning the disclosure of "techniques or

18   procedures for law enforcement investigations or prosecutions," rather than Exemption 7(A)

19   concerning interference in law enforcement proceedings.  EFF Reply at 7.  While the Court

20   considers Exemption 7(E) below, the Government's broad assertions about this generalized risk do

21   not indicate a more particularized risk of interference with pending or prospective law

22   enforcement proceedings.  None of the Government's evidence suggests that exposing these

23   documents would interfere with law enforcement proceedings.  *Cf. Lewis*, 823 F.2d at 379 & n.5

24   (finding Exemption 7(A) properly applied where it was undisputed the release of the requested

25   documents would reveal, among other things, the limits and scope of the IRS's case against the

26

27   _____

28   [10] The *Vaughn* Index repeatedly asserts the conclusory statement under Exemption 7(A) that each withheld document contained "[m]aterial the disclosure of which could reasonably be expected to interfere with enforcement proceedings"—without any further support as to *why*.

United States District Court
Northern District of California

requesting party, the names of third parties whom the IRS had contacted as well as the names of actual and potential witnesses).

Furthermore, the Government acknowledges EFF no longer seeks information related to the names, telephone numbers, and email addresses of individual core mission law enforcement, law enforcement support, and individual personnel involved in the operation of Hemisphere.  *See* Scharf Decl. ¶ 4, Ex. B; *see also* EFF Mot. at 1 n.1.  As EFF concedes the Government may properly redact this information, the Government has no basis to allege that the exposure of these documents would reveal information about law enforcement agents, etc., which would risk interference with law enforcement proceedings.  Without more, the Court cannot find these documents are properly withheld under Exemption 7(A).

2.     Exemption 7(D)

Exemption 7(D) provides that "records or information compiled for law enforcement purposes" may be withheld if they "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  "Under this exemption, a source is 'confidential' if it 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 814 (9th Cir. 1995) (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)).  Indeed, the Ninth Circuit has "observed that such an express promise of confidentiality is 'virtually unassailable.'"  *Id.* (quoting *Wiener*, 943 F.2d at 986).  It is also easy to prove: the Government "need only establish the informant was told his name would be held in confidence."  *Id.*  "The focus, therefore, is not whether 'the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential.'"  *Id.* (quoting *Landano*, 508 U.S. at 172) (emphasis in original).  To meet its burden, the Government must "make an individualized showing of confidentiality with respect to each source"; confidentiality cannot be presumed.  *Landano*, 508 U.S. at 174, 178.

The question is whether the sources are actually confidential.  The Government argues "the information Defendant withheld under Exemption 7(D) identifies private-sector companies that are instrumental in the operation of Hemisphere and whose role in the operation of Hemisphere entails providing information to the Government."  Gov't Mot. at 16 (citing Myrick Decl. ¶ 54). Further, "[t]he declaration explains, based on information from DEA personnel familiar with Hemisphere, that the companies provide information to law enforcement with the express *expectation* that both the source and the information will be afforded confidentiality and under circumstances where confidentiality *can be inferred* because providing the information can lead to retaliation against the companies."  *Id.* (citing Myrick Decl. ¶ 54) (emphasis added).

EFF argues the Government "has failed to show those companies shared information with the agency under either an express or implied assurance of confidentiality[,]" noting that the Government "only asserts the companies had 'the express *expectation*' of confidentiality" without providing a support that the government's declarant had any "personal knowledge or any other factual basis for [the government's] assertion about any company's expectations."  EFF Mot. at 15 (emphasis in original).  Finally, EFF challenges the implied assurance of confidentiality based on the government's argument that "providing information can lead to retaliation against the companies."  *Id.* at 16.  Specifically, it notes the Supreme Court has held that an "implied understanding of confidentiality" cannot rest solely on the possibility that a private institution "might be subject to possible legal action or loss of business if their cooperation with [law enforcement] became publicly known."  *Id.* (citing *Landano*, 508 U.S. at 176).

Whatever "express expectation" of confidentiality these private companies may have, the Government has provided no indication it ever told these companies their names would be held in confidence.  *Cf. Davin v. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995) ("[I]f an agency attempts to withhold information under Exemption 7(D) by *express* assurances of confidentiality, the agency is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality." (emphasis in original)).

Nor has the Government shown that such an assurance of confidentiality could be reasonably inferred.  "An implied assurance of confidentiality may be inferred from evidence

showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation, the informant's relationship to it, whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'" *EFF II*, 2013 WL 5443048, at *21 (quoting *Landano*, 508 U.S. at 179). Again, the Government makes no showing of reasonable inference of an assurance of confidentiality. As EFF explains, *Landano* dealt with a similar situation where the government "maintain[ed] that an assurance of confidentiality can be inferred whenever an individual source communicates with the FBI because of the risk of reprisal or other negative attention inherent in criminal investigations." 508 U.S. at 176. But the Supreme Court rejected that argument, noting that it is not reasonable to infer that the information is given with an implied understanding of confidentiality in all cases. *Id.* The Government provides no other basis for the Court can assess regarding an implied assurance of confidentiality.

Without more, the Government fails to carry its burden under Exemption 7(D). *See also EPIC*, 2016 WL 3557007, at *9-11 (finding same, but giving the Government the opportunity to "either disclose the relevant information withheld under Exemption 7(D), supplement the record with additional affidavits and authority justifying its withholding, or produce documents for the Court's *in camera* review.").

      3.    <u>Exemption 7(E)</u>

Exemption 7(E) protects from disclosure law enforcement "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To withhold information under this exemption, an agency must demonstrate that the withheld information was "compiled for law enforcement" purposes by establishing a "rational nexus" between "'enforcement of a federal law and the document for which'" the exemption is claimed. *Rosenfeld*, 57 F.3d at 808.

26

United States District Court
Northern District of California

1    The Ninth Circuit recently revisited Exemption 7(E) in *Hamdan v. United States*

2    *Department of Justice*, 797 F.3d 759 (9th Cir. 2015).  In *Hamdan*, the Ninth Circuit adopted the

3    Second Circuit's reasoning in *Allard K. Lowenstein International Human Rights Project v.*

4    *Department of Homeland Security*, 626 F.3d 678 (2d Cir. 2010).  797 F.3d at 777-78.  In so doing,

5    the Ninth Circuit agreed that Exemption 7(E)'s sentence structure indicates that the qualifying

6    phrase in 5 U.S.C. § 552(b)(7)(E)—"if such disclosure could reasonably be expected to risk

7    circumvention of the law"—"modifies only 'guidelines' and not 'techniques and procedures.'"  *Id.*

8    at 778 (quoting *Allard*, 626 F.3d at 681).  Consequently, an agency need not show that disclosure

9    of its techniques would risk circumvention of the law for Exemption 7(E) to apply; rather the risk

10   of circumvention of the law only applies to agency "guidelines."  *See Hamdan*, 797 F.3d at 777.

11   The *Hamdan* court also revisited its prior holding that "Exemption 7(E) only exempts

12   investigative techniques not generally known to the public[,]" *Rosenfeld*, 57 F.3d at 815, *Hamdan*

13   interpreted *Rosenfeld*'s statement as endorsing the withholding of the "specific *means*" of

14   conducting a technique, "rather than an application" of "a known technique."  *Hamdan*, 797 F.3d

15   at 777 (emphasis in original).  *Hamdan* notes that "[i]n *Rosenfeld*, we decided that a pretext phone

16   call was a generally known law enforcement technique"; however "the government argued that the

17   technique at issue involved the specific *application* of a pretext phone call, because it used 'the

18   identity of a particular individual . . . as the pretext.'"  *Id.* (emphasis added) (quoting *Rosenfeld*, 57

19   F.3d at 815).  The *Hamdan* court rejected the government's argument: "accepting it would allow

20   anything to be withheld under Exemption 7(E) because any specific *application* of a known

21   technique would be covered."  *Id.* (citing *Rosenfeld*, 57 F.3d at 815).  Consequently, the Ninth

22   Circuit agreed the FBI properly withheld records the FBI asserted would reveal "techniques and

23   procedures related to surveillance and credit searches," because even though "credit searches and

24   surveillance are publicly known law enforcement techniques . . . . the affidavits say that the

25   records reveal techniques that, if known, could enable criminals to educate themselves about law

26   enforcement methods used to locate and apprehend persons[, which] . . . . implies a specific means

27   of conducting surveillance and credit searches rather than an application."  *Id.* at 777-78.  The

28   Ninth Circuit pointed out that "[b]y contrast, withholding, for example, records under Exemption

7(E) by claiming that they reveal the satellite surveillance of a particular place would be an application of a known technique under *Rosen[feld]* ][.]" *Id.* at 778.

Finally, *Hamdan* does not just interpret *Rosenfeld* but also indicates it is supported by *Bowen v. United States Food and Drug Administration*, 925 F.2d 1225, 1229 (9th Cir. 1991). *See Hamdan*, 797 F.3d at 778 (citing *Bowen* with the "*Cf.*" parenthetical indicating *Bowen* held "that additional details of law enforcement techniques were exempt from disclosure under 7(E) even where some information about those techniques had been previously disclosed"). In the past, courts adopted *Bowen*'s finding that even if techniques where generally known to the public, if the records withheld revealed "detailed, technical analysis" of the techniques and procedures used, then that information may still be properly withheld under Exemption 7(E). *See, e.g.*, *EFF II*, 2013 WL 5443048, at *22; *Am. Civil Liberties Union of N. Cal*, 2015 WL 4241005, at *7; *Am. Civil Liberties Union of N. Cal. v. Fed. Bureau of Investigation*, 2015 WL 678231, at *7 (N.D. Cal. Feb. 17, 2015), *appeal dismissed* (Jan. 5, 2016); *Elec. Frontier Found. v. Dep't of Homeland Sec.* ("*EFF III*"), 2014 WL 1320234, at *5 (N.D. Cal. Mar. 31, 2014); *Am. Civil Liberties Union v. Fed. Bureau of Investigation*, 2013 WL 3346845, at *9 (N.D. Cal. July 1, 2013); *Elec. Frontier Found. v. Dep't of Def.*, 2012 WL 4364532, at *4 (N.D. Cal. Sept. 24, 2012).

As neither party addressed *Hamdan* in their initial briefing, the Court ordered supplemental briefing on *Hamdan*'s potential impact on Exemption 7(E) or segregability. Dkt. No. 38. Unfortunately, rather than clarifying matters, *Hamdan* has left the parties and the Court in a somewhat uncertain position. On one hand, *Hamdan* has adopted the Second Circuit's *Allard* analysis that the government must show risk of circumvention of the law only when it withholds guidelines. But *Hamdan* does not clarify when a record should be considered a guideline or adopt *Allard*'s assessment of what constitutes a guideline. On the other hand, *Hamdan* also purports to clarify the issue of whether the government may only withhold information about "techniques not generally known to the public" as stated in *Rosenfeld*. The parties' briefing on this issue demonstrates confusion over *Hamdan*'s "application" versus "specific means" test, which is also reflected in recent case law. *See Raimondo v. FBI*, 2016 WL 2642038, at *10 (N.D. Cal. May 10, 2016). To further complicate matters, *EPIC* involves several of the same records in this action,

28

but the D.C. Circuit does not recognize the distinction between guidelines and techniques when it comes to applying the "risk of circumvention of the law test." *EPIC*, 2016 WL 3557007, at *11 ("[T]he government must 'demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011))).

The foregoing issues lead the Court to several conclusions. First, although it is unclear what documents in this case qualify as guidelines versus techniques and procedures, as the *Vaughn* Index indicates, a document may realistically contain both. In any event, as discussed below, the distinction between these two types of documents does not appear to ultimately adjust the outcome in this case due to the Government's inadequate supporting evidence. *But see* EFF Third Suppl. Resp. at 3, Dkt. No. 36; EFF Fourth Suppl. Resp. at 4-5, Dkt. No. 38 (persuasively arguing why the Government's descriptions of the disputed documents suggest they provide "an indication or outline of policy" and therefore constitute "guidelines"). Second, the Court interprets *Hamdan* to adopt a test similar to *Bowen* in the sense that the mere fact that the public might know about a general technique or procedure does not mean that the specific means employed as part of that technique or procedure must be disclosed. That said, the Government may not withhold a document simply because the document describes a specific application of the generally known technique or procedure—the document must reveal something more. *See Hamdan*, 797 F.3d at 777-78 (finding withheld records protected because disclosure would "reveal techniques that . . . could enable criminals to educate themselves about law enforcement methods used to locate and apprehend persons . . . . impl[ying] a specific means of conducting surveillance and credit searches"); *see, e.g.*, *EFF III*, 2014 WL 1320234, at *8 (finding government meets its burden where it shows the "operational information" is not generally known and noting that "while EFF succeeds at showing that some aspects of drone operations are generally known, its piecemeal evidence does not establish that further detailed information about drones is generally known."). Where there is no conflict of law or fact, the Court will follow the *EPIC* court's analysis to ensure uniformity where possible.

The Court now turns to the specific records withheld in this case. "For purposes of further

describing the information withheld," the Government divides the information withheld under

Exemption 7(E) into categories.  Gov't Mot. at 18.  The relevant categories at issue in this Order

are: (1) "Cities and States," i.e., the information withheld from ten records regarding the cities and

states in which Hemisphere is located or in which agencies have had contact with the Hemisphere

program; (2) "Companies," i.e., the information withheld from 22 records regarding the identity of

companies that the Government states are "instrumental" to Hemisphere; (3) "Agencies," i.e., the

information withheld from 12 records contained the identity of law enforcement agencies that

"have access" to Hemisphere; and (4) "Requests, processing, responses, and capabilities," i.e.,

details concerning (i) internal procedures and guidelines for making Hemisphere requests, (ii) how

Hemisphere requests are routed and processed and how resources are organized and deployed, (iii)

how Hemisphere results and output are delivered and presented to law enforcement, and (iv) how

Hemisphere technically works and its specific capabilities and limitations.  Gov't Mot. 17-21; EFF

Mot. 16-20.  The Court addresses each of these categories below.

> a.      Cities and States

In the first category, the Government has withheld from ten records information regarding

the cities or states in which Hemisphere is located or in which agencies have had contact with the

Hemisphere program.  *See Vaughn* Index at Nos. 4, 6, 9-11, 17-18, 23, 26, 28.  This information

was not considered in *EPIC*.  The DEA indicates it released many pages containing city and state

information, but it does not deny that it continues to withhold some of this information.  The

Government asserts this information "could be used by criminals to disrupt law enforcement

operations or obtain unauthorized access to information about such operations."  Gov't Mot. at 18;

Myrick Decl. at 16.  But the Government does not explain how criminals could do this by using

information about the cities and states where Hemisphere.  *See* EFF Reply at 17.  EFF also notes

that the public already knows that Hemisphere has regional centers in Atlanta, Houston, and Los

Angeles, but the Government presents no evidence suggesting criminals have used this publicly

available information to disrupt law enforcement operations or obtain unauthorized access to

information.  *Id.*

Without more, the Court has no basis to find that the release of documents containing

30

information with the cities and states that use Hemisphere would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The Government has not shown that information regarding the cities and states where Hemisphere is located was properly withheld and subject to protection under Exemption 7(E).  *See EFF II*, 2013 WL 5443048, at *23 (rejecting Exemption 7(E) applies to information identifying the "field office" conducting an investigation, where there was no specific justification for withholding this information).

           *b.*    *Companies*

     The Government has withheld from 22 records the identities of companies it contends are "instrumental" to Hemisphere.  *See Vaughn* Index at Nos. 1-2, 5-8, 10, 12, 16-18, 22-23, 25-32, 34.  The *EPIC* court also considered this information.  *See EPIC*, 2016 WL 3557007, at *12.  As in that case, the Government asserts criminals could use this information to "tailor or adapt their activities to evade apprehension," or "to attack facilities involved in the Hemisphere program." *See* Myrick Decl. ¶ 58(h); Gov't Mot. at 19 (arguing "[c]riminals could use this information to evade detection or disrupt Hemisphere's operations (citing Myrick Decl. ¶ 58)); *EPIC*, 2016 WL 3557007, at *12.  In response, EFF argues the public has known for two and a half years—that is, since The New York Times' 2013 article on it—that AT&T supports Hemisphere, and the Government has not shown or even argued that criminals have ever attempted to use this information to evade or disrupt Hemisphere.  EFF Mot. at 17.

     The Court agrees with EFF that the Government has not provided facts showing why it is likely criminals would use the identities of the companies that are instrumental to Hemisphere to evade or attack Hemisphere-related facilities.  *See also EPIC*, 2016 WL 3557007, at *13 (discussing various public reports about Hemisphere identifying various companies, and ultimately concluding that "[t]he DEA [] failed to logically demonstrate how release of the private corporation's names would assist drug traffickers seeking to evade law enforcement.").  The *EPIC* court thoroughly analyzed the Government's shortcomings in asserting Exemption 7(E) over the same or similar records containing this information.  *Id.* at *12-13.  Although that court did not

United States District Court<br>Northern District of California

acknowledge the distinction between guidelines and techniques and procedures, its analysis nonetheless correctly indicates that, regardless of nature of the documents, the Government has neither shown risk of circumvention of the law nor risk of exposure of a specific means of the Government's use of Hemisphere by exposing the identities of the companies related to Hemisphere. *See Hamdan*, 797 F.3d at 777-78; *see also EPIC*, 2016 WL 3557007, at *13 ("Publicly available information about such telecommunication companies' facility locations is as available now as it would be were the DEA to disclose the identities of the companies assisting with Hemisphere."). Without more, the Government has not demonstrated this information was properly withheld.

> c.    *Agencies*

The Government has withheld from 12 records information about the identities of the law enforcement agencies that use Hemisphere. *See Vaughn* Index at Nos. 1, 4, 6, 16, 18-19, 22-23, 26, 28, 31, 34. As the Government argued in *EPIC*, it believes that "[b]ecause every law enforcement agency has its own respective focus and sphere of authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor their activities to avoid apprehension" because "those criminals and criminal organizations would be better informed about the capabilities of their pursuers." *EPIC*, 2016 WL 3557007, at *14; *see also* Gov't Mot. at 21.

The *EPIC* court considered and ultimately rejected these same arguments. It found the Government's arguments "conclusory" and distinguished the cases the Government relies on for the proposition that agency identities could be withheld under Exemption 7(E). *See EPIC*, 2016 WL 3557007, at *14-15 (citations omitted). The Government's arguments and support in this matter are no more extensive than the Government provides in *EPIC*, and this Court agrees with the *EPIC* court's conclusion. There is no indication that the release of the identities of the agencies that use Hemisphere risks circumvention of the law or exposes techniques or procedures not already known to the public. *See Hamdan*, 797 F.3d at 778 ("[W]ithholding, for example, records under Exemption 7(E) by claiming that they reveal the satellite surveillance of a particular place would be an *application* of a known technique under *Rosen[feld]*[.]" (emphasis in original)).

32

In contrast to *Hamdan*, the Government does not provide support for the notion that further detail about which agencies use Hemisphere "would compromise the very techniques the government is trying to keep secret." *Id.* Accordingly, as in *EPIC*, the Government has not demonstrated this information was properly withheld.

> d.      *"Requests, processing, responses, and capabilities"*

The final category of information withheld pursuant to Exemption 7(E) relates to details concerning (i) internal procedures and guidelines for making Hemisphere requests (*Vaughn* Index at Nos. 1-2, 4-12, 14, 17, 19, 22-23, 25-32, 34), (ii) how Hemisphere requests are routed and processed and how resources are organized and deployed (*id.* at Nos. 1-2, 4-7, 10, 16, 19, 22, 26, 28-29, 31-32), (iii) how Hemisphere results and output are delivered and presented to law enforcement (*id.* at Nos. 4, 22, 26, 29, 34), and (iv) technical details about how Hemisphere works and its specific capabilities and limitations (*id.* at Nos. 1, 4-8, 10, 16, 22, 26-29, 34). *See* EFF Mot. at 19 (outlining same).

Regardless of whether the documents are guidelines or techniques and procedures, the Court finds the Government has not demonstrated that it properly withheld these documents. Specifically, the Government's *Vaughn* Index and supporting declarations do not clearly elucidate the nature of the withheld documents or show how they could reveal information that either risks circumvention of the law or exposure to something more than a generally known technique or procedure.

EFF persuasively cites numerous articles and other resources describing the publicly known facts about Hemisphere, including Hemisphere's "use[ of a] complicated phone call pattern analysis to map social networks, identify multiple phone numbers used by a single person, and determine a caller's location"; AT&T's relationship with Hemisphere; the roles of various government units including the DEA, the Office of National Drug Control Policy, and theHigh Intensity Drug Trafficking Area program; the kinds of phone records logged into the Hemisphere database; the use of administrative subpoenas to obtain Hemisphere information without a warrant; and the use of this program to find criminals who discard cellphones frequently to thwart government tracking. *See* EFF Mot. at 1-4 and related footnotes. As the *EPIC* court notes, "[t]he

cooperation of major telecommunication companies with Hemisphere has been widely reported by various news outlets," and "according to one of the media reports cited in EPIC's Complaint, the AT&T database 'includes every phone call which passes through the carrier's infrastructure, not just those made by AT&T customers.'" *EPIC*, 2016 WL 3557007, at *12-13 (quoting *U.S. Drug Agency Partners with AT&T for Access to 'Vast Database' of Call Records*, The Guardian, Sept. 2, 2013; also citing Shane & Moynihan, *supra* pp.1-2.). The New York Times article includes a link to a slide show presentation about the Hemisphere project with specific descriptions of instances where Hemisphere had identified specific individuals' phone numbers and suspects' location. *See Synopsis of the Hemisphere Project*, N.Y. Times (Sept. 1, 2013, http://www.nytimes.com/interactive/2013/09/02/us/hemisphere-project.html?_r=0)).

While EFF demonstrates the public knows and has access to a significant body of information about Hemisphere and how it works, that does not necessarily indicate that all of the information the Government withheld is generally known or that the documents sought here could not reveal more specific information beyond what is generally known. Unfortunately, the Government provides little more than conclusory statements that the information contained in these documents

> would help criminals understand when and how law enforcement authorities are able to use Hemisphere against them and thereby help criminals tailor or adapt their activities to avoid apprehension. Similarly, knowledge of internal guidelines and restrictions for the use of Hemisphere would help criminals tailor or adapts their activities to evade apprehension.

*See, e.g.*, *Vaughn* Index at 27, No. 8. Several of the documents appear provide general information about what Hemisphere is and how to use Hemisphere, including providing forms and model language. *See, e.g.*, *id.* at 54, No.19 ("including the specific terminology used to refer to certain Hemisphere resources and personnel"); *id.* at 78, No. 26 (a Hemisphere introduction and request tutorial). But the *Vaughn* Index is not clear about how revealing these documents risks circumvention of the law or exposing something more than a generally known technique or procedure. The Government's supporting declaration is also of little assistance. It notes, for instance, that some of the documents provide "[d]etails about how Hemisphere results and output

34

1  are delivered to and presented to law enforcement, including sample results displays" (Myrick

2  Decl. ¶ 58(g)), but it does not explain how this risks circumvention of the law or provides

3  information about Hemisphere's capabilities (i.e., a government technique or procedure) that is not

4  already generally known.

5      While it is tempting to make assumptions as to why the Government believes such

6  information is protected, the Government ultimately has not provided the Court with enough

7  support to be able to determine on a *de novo* basis whether the Government properly withheld

8  these documents.  For the most part, the Government has not provided the sort of individualized,

9  tailored descriptions to allow the Court to find that some of these documents should or should not

10  be protected under Exemption 7(E).  *See Wiener*, 943 F.2d at 978-79.  Accordingly, the

11  Government has not provided evidence demonstrating this information was properly withheld.

12  **C.    Next Steps**

13      EFF urges the Court to conduct an *in camera* review of the withheld materials if it has any

14  doubts about releasing the documents.  The Court finds this request appropriate given the findings

15  above, as well as the Court's concerns over the Government's choices to withhold and segregate

16  certain information in this case.  Among other things, EFF provides Exhibits 9 and 10 to the

17  Lynch Declaration.  Both Exhibits contain the same slide show presentation by the Los Angeles

18  Hemisphere Regional Center.  *See* Lynch Decl., Exs. 9-10.  But the Government provided Exhibit

19  9 with several redactions, whereas the Los Angeles Clearinghouse (which operates the Los

20  Angeles Hemisphere Regional Center) provided EFF with Exhibit 10, the same report with far

21  fewer redactions.  For instance, in the first slide, the Government disclosed only the title

22  ("Hemisphere monthly requests"), while the Los Angeles Hemisphere Regional Center also

23  disclosed the number of requests.  *Compare* Lynch Decl., Ex. 9 *with id.*, Ex. 10; *see also* EFF

24  Mot. at 19-20 (discussing same).  It is not clear under what Exemption the Government withheld

25  this information or why.  While the Government asserts it used "surgical precision . . . in its word-

26  by-word review and analysis, release-redaction decisions, and segregability analysis" (Gov't First

27  Suppl. Resp. at 5-6, Dkt. No. 34), ultimately the vagueness and conclusory nature of the

28  Government's supporting evidence as well as the discrepancy between Exhibits 9 and 10

1   undermines its assertion.

2           In *Hamdan*, the Ninth Circuit held that a "district court is not required to conduct an

3   independent *in camera* review of each withholding unless an agency declaration lacks sufficient

4   details or bears some indicia of bad faith by the agency."  797 F.3d at 779.  Under the

5   circumstances present here, the Court finds it appropriate to review the documents the

6   Government withheld under Exemption 7(E).  *See, e.g.*, *Andrus v. U.S. Dep't of Energy*, 2016 WL

7   4186917, at *10 (D. Idaho Aug. 8, 2016) (as the government's "*Vaughn* index and affidavits are

8   conclusory and insufficiently detailed, the Court must conduct an in camera review of these

9   documents in order to sufficiently determine whether the [Exemption] has been properly invoked,

10  or whether further disclosure is ultimately appropriate.").  Additionally, as the Court has come to a

11  different conclusion than the *EPIC* court on Documents 1 and 4 (withheld under Exemption 5), the

12  Court will review these documents as for the Exemption 5 withholding in addition to their

13  Exemption 7(E) withholding.

### CONCLUSION

15          For the reasons stated above, the Court **DENIES IN PART** and **GRANTS IN PART** the

16  Government's Motion for Summary Judgment, and **GRANTS IN PART** and **DENIES IN PART**

17  EFF's Motion for Summary Judgment.  The Government shall lodge copies of the documents

18  withheld under Exemption 7(E) for *in camera* review by **January 23, 2017**.  No electronic copy

19  should be filed on the public docket; rather, the Government shall file a notice of lodging of these

20  materials.

21          **IT IS SO ORDERED.**

22  Dated: December 22, 2016

23  _____

24  MARIA-ELENA JAMES
    United States Magistrate Judge

*United States District Court*
*Northern District of California*